**Louis G. FOLEY and Angela Foley, Plaintiffs-Appellants,**

v.

**UNITED STATES of America and General Services Administration, Defendants-Appellees.**

**No. 608, Docket 80–6071.**

United States Court of Appeals, Second Circuit.

Argued Jan. 30, 1981.

Decided March 31, 1981.

Abraham Reingold, Brooklyn, N. Y. (Glabman, Rubenstein, Reingold & Rothbart, Brooklyn, N.Y., of counsel), for plaintiffs-appellants.

Ben Wiles, Asst. U. S. Atty., Brooklyn, N. Y. (Edward R. Korman, U. S. Atty., E. D. N. Y., Harvey M. Stone, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendants-appellees.

Before LUMBARD, VAN GRAAFEILAND and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

The plaintiffs appeal from an order of Judge Costantino of the Eastern District of New York which denied their motion to vacate an order of dismissal. Judge Costantino dismissed their tort claim against the government upon oral motion of the United States Attorney based upon an asserted failure to prosecute, failure to appear and failure to comply with the district court's discovery order. We hold that the alleged errors by the plaintiffs were not of the severity that would justify refusing to vacate a judgment of dismissal. Accordingly, we reverse and remand for further proceedings on the merits of the plaintiffs' damage claim.

Louis Foley was the bank manager of Manufacturers Trust Company at 830 Third Avenue, in Brooklyn, New York. Those premises were leased from, and owned and operated by, the United States. On October 5, 1974, while descending the outside steps, Louis Foley fell on his knees, allegedly because of a hole in the step and a loose

runner. In the ensuing year, he was hospitalized intermittently for periods totaling four months. As reported by Dr. Robert Kelleher who examined him on the government's behalf, Louis Foley had been in fairly good health before the fall except for an arthritic condition. Because of the October 5 knee injury, however, he received extensive physical therapy and underwent surgery on both knees which wired the left patella into place and required casts on both legs. He became totally disabled and remained unemployed until his death.

Louis and Angela Foley initiated this action on December 15, 1976. On May 3, 1978, after moving to Saratoga Springs, New York, Louis Foley died; there is no allegation that his death was related to injuries from the fall. Upon medical advice, Angela Foley went to Florida shortly thereafter to recuperate from tensions and chronic depression brought about by her husband's death. On July 12, 1978, sixteen months after answering the complaint, the government served interrogatories upon the plaintiffs' attorneys. Obviously, however, Louis Foley's sworn responses were no longer available.

The district court scheduled a conference for November 29, 1978, and the plaintiffs' attorney first learned of Louis Foley's death shortly before that date from one of Foley's two sons. On November 29, after being informed of Louis Foley's death, Judge Costantino adjourned the conference until March 9, 1979, allowing plaintiffs' counsel an opportunity to obtain missing medical records and to have Angela Foley appointed administratrix of her husband's estate. The attorney representing the plaintiffs was engaged in trial in Nassau County on March 9, 1979, so he instructed an associate to attend the conference and seek adjournment due to actual engagement. The associate, who had himself become engaged, sent a second-year law student to seek the adjournment. The student attended the conference and reported to the associate that the government's interrogatories had to be answered by April 19, 1979 but did not inform him that an attorney for the plaintiff was required to attend a conference on that same date.

The plaintiffs' attorneys did not receive medical reports of Louis Foley's treatment in Saratoga Springs until April 16, 1979. The responses to the interrogatories were served by mail on April 19. Angela Foley, however, remained in Florida and was thus not available for filing a petition for letters of administration.

On April 19, 1979, the date of the scheduled conference, the United States Attorney moved to dismiss the case, asserting that the plaintiffs had failed to respond to the government's interrogatories. Judge Costantino granted the motion on grounds of failure to prosecute, failure to appear, and failure to comply with the discovery deadline. On April 23, the United States Attorney received copies of the plaintiffs' responses to its interrogatories, and the plaintiffs received a postcard from the Clerk of the Eastern District informing them of the dismissal.

The plaintiffs' sons, Edward and Louis Foley, Jr., were active in two local businesses in Saratoga Springs and found it difficult to meet with the Brooklyn attorney handling this case: appointments in May and June of 1979 were cancelled before they finally met in July. Their attorney informed them at that meeting of the urgent need to appoint an administrator for purposes of moving to vacate the dismissal. Believing that their mother was the only person qualified to administer their father's estate, the sons initially delayed to await Angela Foley's return, but she again postponed it. The sons then determined to have Louis Foley, Jr. be the administrator, but Angela Foley's signature was still necessary on a Waiver and Consent for this appointment.

Upon her return from Florida in September of 1979, she signed the Waiver and Consent, and Louis Foley, Jr. filed for letters of administration through the family's local counsel in Saratoga County. The Surrogate's Court of that county granted him Limited Letters of Administration a month later, on October 23, 1979. Just two days

thereafter the plaintiffs moved to vacate the dismissal in this case.[1]

In an order filed February 15, 1980, Judge Costantino denied the motion to vacate. Recognizing that the responses to the interrogatories had been filed by mail on the appropriate date, the district court abandoned its original justification for dismissal based on the plaintiffs' failure to comply with its discovery order. The district court held, however, that the plaintiffs' actions presented a "pattern of neglect" and that the six-month delay between dismissal and the motion to vacate constituted inexcusable delay under Fed.R. Civ.Pro. 60(b). Upon reargument on April 30, 1980, Judge Costantino again refused to vacate the dismissal. The plaintiffs appeal from the February 15 and April 30 orders. In light of the legal and geographical complications that slowed the prosecution in this case, we believe that the district court abused its discretion in finding the plaintiffs' delay to be inexcusable under Rule 60(b).

Rule 60(b) provides in part that a district court can relieve a party or the party's legal representative from a final judgment for mistake, inadvertence, excusable neglect, or "any other reason justifying relief from the operation of the judgment." The rule specifies that motions for relief based upon mistake, inadvertence, or excusable neglect shall be made within one year after the judgment; and, in all cases, the motion must be made within a reasonable time.

As the district court observed, the one-year limit is an outside extreme, not an automatically available time for filing the motion; but the district court incorrectly concluded that the six-month delay here was inexcusable. Dismissal is a severe and unrelenting remedy for the series of mistakes and logistical difficulties that befell the plaintiffs in prosecuting this claim. First, the absence of the plaintiffs' counsel from the March 9, 1979 conference was indisputably the product of mistake. Had it not been for that absence, the plaintiffs' action would probably never have been dismissed. Second, most of the succeeding delay was caused by the understandable difficulty of obtaining letters of administration while the sons were in Saratoga Springs, the widow in Florida, and the attorney in charge of this case in Brooklyn. A final month of delay occurred in the state court after Louis Foley, Jr. had petitioned for letters of administration. In any event, the district court made no finding that the delay prejudiced the government's defense, and it is difficult to imagine what possible undue prejudice might arise from a six-month delay in this relatively simple case in comparison to the substantial injustice that the plaintiffs suffer through dismissal.

Contrary to the government's characterization, this is not a case of gross neglect, such as where an attorney chooses not to attend a conference of which he is fully aware because he is compiling papers for another case. *Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Nor did the attorney delay ten months before filing a 60(b) motion because his files had been moved to his basement. *Dominguez v. United States*, 583 F.2d 615 (2d Cir. 1978) (per curiam), *cert. denied*, 439 U.S. 1117, 99 S.Ct. 1023, 59 L.Ed.2d 76 (1979). Nor did the plaintiffs wait twenty months after their last act advancing the suit before moving to vacate the dismissal. *Cucurillo v. Schulte, Bruns Schiff Gesellschaft, M.B.H.*, 324 F.2d 234 (2d Cir. 1963) (per curiam). Whatever errors and inefficiencies may have delayed the prosecution of this dispute, they do not approach the inexcusable neglect found in those cases. Here the delays were excusable. Thus, we conclude that the district court abused its discretion in denying the plaintiffs' motion to vacate the dismissal.

Reversed and remanded for further proceedings.

---

1. We note that the plaintiffs have not yet moved to substitute Louis Foley, Jr., the administrator of the estate, in place of his deceased father. In light of the urgency to file the Rule 60(b) motion following issuance of the letters of administration, this is a mere detail which should not diminish the plaintiffs' rights in this appeal.