Ante **JEDREJCIC**, d/b/a Unisports, Plaintiff,

v.

**CROATIAN OLYMPIC COMMITTEE,** et al., Defendants.

Nos. 97–CV–3865 (ARR), 96–CV–2506 (ARR).

United States District Court, E.D. New York.

Dec. 3, 1999.

Ante Jedrejcic, Englewood, NJ, plaintiff pro se.

Condon & Forsyth LLP, by Christopher Carlsen, New York City, for defendant Coca Cola Company.

Alfieri, Frohman & Primoff, LLP by Paul Frohman, New York City, for defendants Global Sports Consultants and United States Olympic Committee.

### OPINION AND ORDER

ROSS, District Judge.

I have received the Report and Recommendation on the instant cases dated October 6, 1999 from the Honorable Robert M. Levy, United States Magistrate Judge. Judge Levy recommended that defendants' motion to dismiss the 1997 action, 97–CV–3865, be granted and that plaintiff's motion to reconsider under Rule 60(b) an earlier decision dismissing the 1996 action, 96–CV–2506, be denied. By papers filed November 9, 1999, plaintiff objected to Judge Levy's recommendation. Having conducted a *de novo* review of the record, *see* 28 U.S.C. § 636(b)(1), I hereby adopt Judge Levy's thorough Report and Recommendation, reproduced below, as the opinion of the Court.

*Review of the Report and Recommendation on the 1997 Action*

The parties agree that on June 2, 1997, the date the 1997 action was filed, plaintiff was a citizen of New Jersey for diversity purposes. The defendants contend that on that date the principal place of business of defendant Global Sports Consultants ("Global") was also in New Jersey and thus that this court lacks subject matter jurisdiction because the parties were non-diverse. At a hearing held before Judge Levy, defendant Global pro-

duced a lease, phone records, a rent check, testimony from the president of Global, and other evidence in support of Global's assertion that in April 1997 the company moved at least most of its operations from New York to New Jersey. After exhaustively assessing the strength of the evidence offered and the various challenges to the validity of the evidence posed by Jedrejcic, see Report and Recommendation, at 16–24, Judge Levy concluded that under either the "nerve center" approach or the "place of activities/public impact test," see Royal Indem. Co. v. Wyckoff Heights Hosp., 953 F.Supp. 460, 462 (E.D.N.Y.1996) (citing cases for the two tests used in this circuit), Global's principal place of business on the relevant date was New Jersey.

In his objections to Judge Levy's Report, plaintiff argues that he was unable to prove that Global maintained an office in New York on June 2, 1997 because he never received various documents he requested in discovery. See Plaintiff's Respond [sic] to a Report and Recommendation ("Response"), at 3 (unpaginated). These objections should have been raised in the discovery phase of the litigation. Moreover, even if plaintiff were to provide evidence that Global maintained an office in New York, it would not discredit Judge Levy's conclusion that the evidence presented at the hearing and in submissions to the court demonstrated that on June 2, 1997 Global's *principal* place of business was in New Jersey. Finally, because the burden of proving the existence of complete diversity rests on the party seeking to invoke diversity jurisdiction, see Advani Enters., Inc. v. Underwriters at Lloyds, 140 F.3d 157, 160 (2d Cir.1998), in this case the plaintiff, the absence of evidence provided by the defendants cannot be grounds for denial of defendants' motion.

*Review of the Report and Recommendation on the 1996 Action*

I agree with Judge Levy, for the reasons set forth in the Report and Recommenda-

tion, that the motion to reopen the 1996 action is untimely. See Report and Recommendation, at 29–32. In this regard, the only new objection that plaintiff raises is an entirely unsupported assertion that plaintiff "just remembered" that Global's principal place of business at the time that the 1996 action was filed was Atlanta, Georgia. See Response, at 2–3. Even if this assertion were true, plaintiff has failed to show how his earlier failure to indicate the location of Global's business was due to "mistake, inadvertence, surprise, or excusable neglect", see Fed.R.Civ.P. 60(b)(1), or fraud, misrepresentation, or other misconduct of the defendants, see Fed.R.Civ.P. 60(b)(3), or that any other of the exceptions set forth in Rule 60(b) is applicable. The motion is therefore denied.

### CONCLUSION AND ORDER

For the reasons discussed above, the court adopts in its entirety Judge Levy's Report and Recommendation as the opinion and order of this Court. Defendants' motion to dismiss the 1997 action, 97–CV–3865, is granted and the case is dismissed without prejudice to refile in State Court. Plaintiff's motion to reopen the 1996 action, 96–CV–2506, is denied and his motion for appointment of counsel is denied as moot.

The Clerk of Court is directed to enter judgment in both cases accordingly.

SO ORDERED.

### *REPORT AND RECOMMENDATION*

LEVY, United States Magistrate Judge.

Presently before the court is a motion by defendants Coca–Cola Company ("Coca Cola"), the United States Olympic Committee ("defendant" or "USOC"), and Global Sports Consultants ("defendant" or "Global") (collectively, "defendants") to dismiss action numbered 97 CV 3865 (the "1997 action") for lack of subject matter jurisdiction.[1] (See

---

1. Because defendants' motion challenges this court's subject matter jurisdiction, it is "most properly analyzed under Rule 12(b)(1)." *Brocsonic Co. Ltd. v. M/V "Mathilde Maersk"*, 1999 WL 413456 at *2, No. 98 Civ. 7546, 1999 U.S. Dist. LEXIS 9230, at *4 (S.D.N.Y. June 21, 1999)

(citing *Goodman v. Children's Television Workshop*, 1999 WL 228396 at *2, No. 98 Civ. 8348, 1999 U.S. Dist. LEXIS 5518, at *8 (S.D.N.Y. Apr. 19, 1999)); see also *Kamen v. American Telephone & Telegraph Co.*, 791 F.2d 1006, 1011 (2d Cir.1986) ("[A] 12(b)(1) motion cannot be con-

Memorandum and Order dated December 2, 1998.) By order dated April 14, 1998, the Honorable Allyne R. Ross, United States District Judge, referred this matter to me to oversee discovery and conduct an evidentiary hearing to determine whether this court has subject matter jurisdiction and, pursuant to 28 U.S.C. § 636(b)(1)(B), to issue a report and recommendation.

On February 26, 1999, plaintiff Ante Jedrejcic ("plaintiff" or "Jedrejcic") moved for appointment of counsel in the 1997 action, and, by Order dated March 2, 1999, Judge Ross referred this motion to me. The motion was stayed until the resolution of the jurisdictional issue.

Jedrejcic also moves pursuant to Rule 60(b) of the Federal Rules of Civil Procedure ("Rule 60(b)") to vacate the Order of Dismissal dated June 26, 1996 dismissing action numbered 96 CV 2506 (the "1996 action") for lack of subject matter jurisdiction.[2] By Memorandum and Order dated December 2, 1998, Judge Ross also referred this motion to me "in conjunction with defendants' summary judgment motion in 97 CV 3865" for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Mem. and Order dated December 2, 1998 and April 14, 1998.)

For the reasons stated below, I respectfully recommend that defendants' motion to dismiss the 1997 action for lack of subject matter jurisdiction be granted and that plaintiff's Rule 60(b) motion to vacate the Order of Dismissal in the 1996 action be denied. In light of the court's recommendation, Je-

drejcic's motion for appointment of counsel is denied as moot.

## BACKGROUND

These motions arise against a procedural background that is unusually dense and tangled. On May 20, 1996, plaintiff, then represented by counsel, commenced an action by verified complaint under docket number 96 CV 2506, asserting this court's diversity jurisdiction and alleging interference with contractual relations and breach of contract. Plaintiff contends that the Croatian Olympic Committee ("COC") granted him exclusive licensing rights to the COC's "emblems and/or trademarks" for sales in the United States for a stated period. (96 CV 2506 Verified Compl. ¶ 11.) By Orders dated May 22, 1996 and June 11, 1996, Judge Ross dismissed the 1996 action without prejudice for failure to allege subject matter jurisdiction and granted plaintiff leave to amend the complaint to comply with the jurisdictional requirements of 28 U.S.C. § 1332. In response to these orders plaintiff filed two amended verified complaints on June 4, 1996 and June 18, 1996, respectively. However, each failed to remedy the jurisdictional defects. On June 25, 1996, the court, *sua sponte*, dismissed the 1996 action without prejudice for lack of subject matter jurisdiction, finding that "federal jurisdiction is premised entirely on 28 U.S.C. § 1332, and complete diversity does not exist among the parties."[3] (Order dated June 25, 1996.)

On June 2, 1997,[4] plaintiff, proceeding *pro se*, filed the 1997 action against the same

verted into a Rule 56 motion. . . ."); *Basil Cook Enters., Inc. v. St. Regis Mohawk Tribe,* 26 F.Supp.2d 446, 448 (N.D.N.Y.1998) ("Consideration of matters outside the pleadings does not convert the Rule 12(b)(1) motion to a motion for summary judgment under Fed.R.Civ.P. 56.") (citing *Kamen,* 791 F.2d at 1011).

2. According to plaintiff's affirmation of service, Jedrejcic did not serve a copy of his Rule 60(b) motion on the Croatian Olympic Committee ("COC") even though return of service was executed as to COC. (Affirmation, dated July 7, 1998.) The case was dismissed prior to the filing of COC's answer, which was due on July 9, 1996. (Order dated June 25, 1996.) This court is concerned about preserving COC's rights and is troubled by plaintiff's failure to serve COC a copy

of this motion. However, because the court is recommending that plaintiff's Rule 60(b) motion to vacate the Order of Dismissal be denied, plaintiff's failure to serve COC does not require this court to delay its report and recommendation on this issue.

3. In her order, Judge Ross found that the complaint alleged that Jedrejcic was a citizen of New York and that Global, although described in the complaint as a "domestic corporation," was in fact, as plaintiff's counsel informed the court, a New York corporation. (*See* Order dated June 25, 1996; 96 CV 2506 Verified Compl. ¶¶ 1, 7.)

4. The verified complaint filed for the 1997 action is date-stamped July 2, 1997 by the Clerk's Office. (*See* 97 CV 3865 Compl.) Although the

defendants based upon the underlying events of the initial complaint in the 1996 action, but this time alleging as jurisdictional bases both diversity of citizenship under 28 U.S.C. § 1332 and a federal question (RICO claim) under 28 U.S.C. § 1331. (*See* 97 CV 3865 Compl. as supplemented by Pl.'s submissions, dated January 27, 1998, February 19, 1998, and May 15, 1998.) Judge Ross subsequently dismissed the RICO cause of action from the 1997 complaint.[5] (*See* Mem. and Order dated December 2, 1998.) In her decision, Judge Ross noted that Jedrejcic "appears to argue, in part, that he understood that his filing of the June 2, 1997 amended complaint, designated by the Clerk's Office as 97 CV 3865, was the equivalent of a motion to vacate the judgment in 96 CV 2505, and was filed within the one year period required by Rule 60(b)." (*See* Mem. and Orders dated December 2, 1998 and April 14, 1998; Pl.'s Mem., dated July 6, 1998 ("Pl.'s 7/6/98 Mem."), at 5–6.) Although the cover letter and signature page of plaintiff's 1997 complaint listed Jedrejcic's address as 109 Grand Avenue, Englewood, New Jersey, Jedrejcic again signed and filed a verified complaint that identified him as a New York resident and Global as a "corporation authorized to do business in New York" located at 260 Christopher Lane, Suite 103, Staten Island. (*See* 97 CV 3865 Compl. ¶¶ 1, 3; Defs.' Mot.)

### DEFENDANTS' MOTION TO DISMISS THE 1997 ACTION

On February 8, 1998, defendants moved to dismiss the 1997 action on the ground that complete diversity does not exist between the parties.[6] (Defs.' Mot.) In their motion, Global and USOC do not dispute that plaintiff was a citizen of New Jersey for purposes of diversity jurisdiction[7] or that Global was incorporated in New York during the relevant time period; instead, they claim that at the time the second action was filed, Global had moved its principal place of business to New Jersey. (*Id.*) Plaintiff counters that Global's principal place of business remained New York during the relevant time period, despite the fact that it may have rented office space in New Jersey. (*See* Transcript of Civil Cause for Evidentiary Hearing, dated March 16, 1999 ("Tr.") at 87–89.)

On March 16, 1999, this court held an evidentiary hearing to determine whether Global had moved its principal place of business from New York to New Jersey as of June 2, 1997, and heard testimony from plaintiff and Sead Dizdarevic, President of Global. (Tr. at 1–98.) Clearly, resolution of the motion to dismiss in the 1997 action turns on the determination whether Global had its principal place of business in New York or New Jersey as of June 2, 1997, the com-

cover letter to this complaint is also dated July 2, 1997, Jedrejcic's signature on the last page of the complaint is dated June 2, 1997. (*See id.*) The Request to Waive Filing and Service Fees and Order is dated by the Clerk of the Court twice, June 2, 1997 and July 2, 1997, and bears a notary public's signature dated July 1, 1997. This court analyzes the jurisdictional issues at bar using June 2, 1997 as the filing date because Judge Ross determined that Jedrejcic's 1997 action was filed June 2, 1997. (*See* Mem. and Orders dated December 2, 1998 and April 14, 1998.)

5. If the court finds that there is no diversity jurisdiction pursuant to 28 U.S.C. § 1332, any pendant state law claims should be dismissed for lack of supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

6. Although not asserted by plaintiff, the court has examined the possible applicability of judicial estoppel to this case. "Judicial estoppel prevents a party in a legal proceeding from asserting a position that is inconsistent with one which the party has previously set forth in a prior legal proceeding." *Bonnie & Co. Fashions, Inc.*, 18 F.Supp.2d 297, 301 (S.D.N.Y.1998) (citing *Bates v. Long Island R.R. Co.*, 997 F.2d 1028, 1037 (2d Cir.1993)). In order to invoke judicial estoppel, the following two elements must be established: "(1) the party against whom judicial estoppel is being asserted advanced an inconsistent factual position in a prior proceeding, and (2) the prior inconsistent position was adopted by the first court in some manner." *Id.* (quoting *AXA Marine and Aviation Ins. Ltd. v. Seajet Indus. Inc.*, 84 F.3d 622, 628 (2d Cir.1996)). Thus, under these standards judicial estoppel is not appropriate because defendants' contention that Global moved its principal place of business from New York to New Jersey before the 1997 action was filed on June 2, 1997 is not necessarily inconsistent with the assertion that their principal place of business was New York when the 1996 action was commenced on May 20, 1996. *See Bonnie & Co. Fashions*, 18 F.Supp.2d at 301.

7. However, all defendants dispute plaintiff's claim of New Jersey citizenship as of May 20, 1996, the commencement date of the 1996 action.

mencement date of the 1997 action.[8] Because the court finds that Global had in fact moved its principal place of business to New Jersey as of June 2, 1997, there is no diversity jurisdiction. Accordingly, the court respectfully recommends that defendants' motion to dismiss the 1997 action be granted.

## PLAINTIFF'S RULE 60(b) MOTION TO VACATE THE DISMISSAL OF THE 1996 ACTION

On July 13, 1998, plaintiff moved under Rule 60(b) to vacate the June 25, 1996 Dismissal Order in the 1996 action seeking to cure the jurisdictional defects under 28 U.S.C. § 1332. Although plaintiff signed the verified complaint and two amended verified complaints in the 1996 action, alleging that he was a resident of New York, (*See* 96 CV 2506 Am. Verified Compl., dated June 17, 1996, ¶¶ 1, 3), plaintiff now claims that his previous attorney, Charles Spinelli ("Spinelli"), knew that he had been a resident of New Jersey since 1995 and "lied about [his] residence in order to dismiss [his] case." (*Id.* at 5; Pl.'s 7/6/98 Mem. at 1–2, 5.) According to plaintiff, Spinelli never informed him that he had filed two amended verified complaints, that this case had been dismissed or that he had a right to appeal the dismissal order. (Pl.'s 7/6/98 Mem. at 3.) Plaintiff also contends that, after discovering that the 1996 action had been dismissed, he wrote to Spinelli on June 30, 1997 asking him to re-open the case, but never received a response. (*Id.* at 5; Ex. K.) Nonetheless, plaintiff insists that he never relieved Spinelli as counsel.

Plaintiff further contends that Global and USOC also knew that he was a resident of New Jersey, not New York, at the time he filed the 1996 action, because plaintiff's ex-wife was an officer of Global at that time. Plaintiff accuses Global of stealing documents relating to this case in an effort to prevent him from presenting evidence to the court. (*Id.* at 2.) In plaintiff's view, Spinelli, defendants and their counsel "purposefully committed fraud upon this court" by failing to acknowledge that he lived in New Jersey. (*Id.* at 6.) As a result of this alleged fraud, plaintiff argues that he is entitled to relief under Rule 60(b). (*Id.*) For the reasons set forth below, the court respectfully recommends that plaintiff's motion to vacate the judgment under Rule 60(b) be denied. The court will begin with a discussion of defendants' motion to dismiss the 1997 action.

## DISCUSSION: MOTION TO DISMISS THE 1997 ACTION

### LEGAL STANDARDS

Challenges to subject matter jurisdiction are "most properly analyzed under Rule 12(b)(1)" of the Federal Rules of Civil Procedure ("Rule 12(b)(1)"). *Brocsonic Co. Ltd. v. M/V "Mathilde Maersk"*, No. 98 Civ. 7546, 1999 WL 413456 at 2, 1999 U.S. Dist. LEXIS 9230, at *4 (S.D.N.Y. June 21, 1999) (citing *Goodman*, 1999 WL 33030 at *2, 1999 U.S. Dist. LEXIS, at *8). Where litigants raise factual challenges to a court's subject matter jurisdiction, the court may examine extrinsic evidence to determine whether jurisdiction exists. *See United States v. Vazquez*, 145 F.3d 74, 80 (2d Cir.1998) (pursuant to Rule 12(b)(1), court permitted to look beyond the pleadings in order to resolve factual disputes regarding subject matter jurisdiction); *Keith v. Black Diamond Advisors, Inc.*, 48 F.Supp.2d 326, 328 (S.D.N.Y.1999); *Peters v.*

---

8. For purposes of deciding the motion in the 1997 action, the court need not determine whether Jedrejcic was a citizen of New Jersey rather than New York. If Jedrejcic continued to be a citizen of New York, this court would lack subject matter jurisdiction because Global was incorporated in New York during the relevant time period. (*See* Tr. at 14, 35, 92 and Ex. 4.) On the other hand, if Jedrejcic had established a new domicile in New Jersey at the time he filed the 1997 action, the pertinent issue would be whether Global had moved its principal place of business to New Jersey as of June 2, 1997. Since this court concludes that Global had dual citizenship in New York (its place of incorporation) and New Jersey (its principal place of business) during the relevant time period, it is not necessary to determine whether Jedrejcic established a new domicile in New Jersey as of June 2, 1997. Complete diversity is absent no matter which state, New York or New Jersey, the court determines to be Jedrejcic's domicile. *See infra* at 70–76. In the 1996 action, the court finds that Jedrejcic failed to establish a new domicile in New Jersey as of May 20, 1996; accordingly, he remained a citizen of New York for purposes of diversity. *See infra* at 82–85. Similarly, the court finds that Jedrejcic did not establish a new domicile in New Jersey as of June 2, 1997. *See id.*

*Timespan Communications, Inc.*, No. 97 Civ. 8750, 1999 WL 135231 at *2, 1999 U.S. Dist. LEXIS 2797, at *8 (S.D.N.Y. Mar. 12, 1999). Therefore, in deciding whether there is subject matter jurisdiction over the 1997 action, this court will use the standard of review under Rule 12(b)(1).

■ Diversity jurisdiction lies where there is a suit between citizens of different states and the amount in controversy exceeds $75,-000. *See* 28 U.S.C. § 1332; *Advani Enters., Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir.1998); *Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.*, 101 F.3d 900, 906 (2d Cir.1996). The fundamental purpose of diversity jurisdiction is to "protect out-of-state residents from the bias state courts might harbor in favor of in-state citizens." *Farella v. Home Depot, Inc.*, No. 97 Civ. 164, 1997 WL 181166 at *1, 1997 U.S. Dist. LEXIS 4740, at *2 (S.D.N.Y. April 14, 1997). In order for a federal court to have subject matter jurisdiction based on Section 1332, there must be complete diversity. *See Peters v. Timespan Communications, Inc.*, No. 97 Civ. 8750, 1999 WL 135231 at *3, 1999 U.S. Dist. LEXIS 2797, at *10 (S.D.N.Y. Mar. 12, 1999) ("It is well established that to invoke a federal court's diversity jurisdiction under 28 U.S.C. § 1332, there must be complete diversity between all plaintiffs and defendants in the lawsuit, and the court lacks diversity jurisdiction if any plaintiff is a citizen of the same state as any defendant.") (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806); *see also Advani*, 140 F.3d at 160 (citing cases); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 445 (2d Cir.1995) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990)); *Keire v. Curtis, Morris & Safford, PC.*, No. 98 Civ. 387, 1999 WL 173571 at *2, 1999 U.S. Dist. LEXIS 3730, at *3 (S.D.N.Y. Mar. 29, 1999). Moreover, the party seeking to invoke diversity jurisdiction has the burden of proving by a preponderance of the evidence that complete diversity existed at the time the action was commenced. *Advani*, 140 F.3d at 157 (stating party seeking jurisdiction "bears the burden of demonstrating grounds for diversity exist and that diversity is complete"); *Maryland Casualty Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir.1993) (citing *Anderson v. Watts*, 138 U.S. 694, 702–703, 11 S.Ct. 449, 34 L.Ed. 1078 (1891)); *Peters*, 1999 WL 135231 at *2, 1999 U.S. Dist. LEXIS 2797, at *11; *Goodman v. Polyvinyl Films, Inc.*, No. 95 Civ. 3365, 1999 WL 33030 at *2, 1999 U.S. Dist. LEXIS 705, at *6 (S.D.N.Y. Jan. 21, 1999); *Bonnie & Co. Fashions v. Bankers Trust Co.*, 18 F.Supp.2d 297, 301 (S.D.N.Y. 1998); *DiMaggio v. International Sports Ltd.*, No. 97 Civ. 7767, 1999 WL 675979 at *3, 1998 U.S. Dist. LEXIS 13468, at *8 (S.D.N.Y. Aug. 31, 1998); *Dali (USA), Inc. v. Steven Lee*, No. 96 Civ. 3305, 1996 WL 592723 at *2, 1996 U.S. Dist. LEXIS 15263, at *3 (S.D.N.Y. Oct. 16, 1996).

■ However, a failure to allege facts establishing jurisdiction need not prove fatal to a complaint because "a possible cure for the defective jurisdictional averments ... is further amendment, pursuant to 28 U.S.C. § 1653." 28 U.S.C. § 1653 (providing "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *Advani*, 140 F.3d at 161 ("We have consistently recognized that Section 1653 should be construed 'liberally to permit the action to be maintained if at all possible to determine from the record that jurisdiction does in fact exist.' ") (quoting *John Birch Soc'y v. National Broad. Co.*, 377 F.2d 194, 198 (2d Cir.1967)); *Canedy v. Liberty Mutual Ins. Co.*, 126 F.3d 100, 102 (2d Cir. 1997) (noting "such amendments will be freely permitted where necessary to avoid dismissal on purely technical grounds" and that "we generally afford an opportunity for amendment"). "Section 1653 'permits the action to be maintained if it is at all possible to determine from the record that jurisdiction does in fact exist.' " *Goodman*, 1999 WL 33030 at *2, 1999 U.S. Dist. LEXIS 705, at *6 (quoting *John Birch Soc'y*, 377 F.2d at 199). Furthermore, a court may resolve disputed jurisdictional issues of fact by reference to evidence outside the pleadings, such as affidavits, deposition testimony, documentary evidence, and, as is the case here, the testimony of witnesses called during an evidentiary hearing. *See, e.g., Raphael v. 18 Restaurant, Inc.*, 954 F.Supp. 549, 552 (E.D.N.Y.1996) (indicating hearings normally

required to determine subject matter jurisdiction when "court does not have sufficient information before it to determine the principal place of business of each defendant . . ."); *see also Dillard v. Runyon,* 928 F.Supp. 1316, 1321–22 (S.D.N.Y.1996), *aff'd,* 108 F.3d 1369, 1997 WL 138691 (2d Cir.1997); *Ferrara Bakery & Café, Inc. v. Colavita Pasta & Olive Oil Corp.,* No. 98 Civ. 4344, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS 2872, at *7 (S.D.N.Y. Mar. 12, 1999) ("[A] court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter [jurisdiction] exists."); *Peters,* 1999 WL 135231 at *3, 1999 U.S. Dist. LEXIS 2797, at *8 (stating that where parties raise factual challenges by way of Rule 12(b)(1), "the court may conduct whatever further proceedings are appropriate to determine whether it has jurisdiction") (citing *Guadagno v. Wallack Ader Levithan Assoc.,* 932 F.Supp. 94, 95 (S.D.N.Y.1996)).

■ In the instant action, Jedrejcic has the burden of establishing that complete diversity existed and although his pleadings contain defective jurisdictional allegations, the court, utilizing 28 U.S.C. § 1653, gives generous consideration to his claim because he is a *pro se* litigant. *See Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (advising court "to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training"); *In re Krautheimer,* 210 B.R.

37, 41 (Bkrtcy.S.D.N.Y.1997) (taking into account plaintiff's *pro se* status in reviewing claim and noting the Second Circuit has "long evinced a sensitivity toward the plight of the uncounseled [party] attempting to navigate the technically-laden road to the courthouse") (quoting *Patrick v. LeFevre,* 745 F.2d 153, 160 (2d Cir.1984)). Plaintiff's *pro se* status does not exempt him from compliance with "relevant rules of procedure and substantive law" or the burden of proving the facts on which his claim is based. *See Traguth,* 710 F.2d at 95; *Fetik v. New York Law School,* No. 97 Civ. 7746, 1998 WL 531843 at *3, 1999 U.S. Dist. LEXIS 9755, at *10 (S.D.N.Y. June 29, 1999) (noting that *pro se* plaintiff "is not excused from producing 'highly convincing' evidence in support of her motion to vacate a final judgment") (quoting *Gwynn v. Deleo,* No. 86 Civ. 1596, 1991 WL 125185 at *4, 1991 U.S. Dist. LEXIS 8910, at 11–12 (S.D.N.Y. July 3, 1991)) (quoting *Kotlicky v. U.S. Fidelity & Guaranty Co.,* 817 F.2d 6, 9 (2d Cir.1987)) (quoting *United States v. Cirami,* 563 F.2d 26, 33 (2d Cir. 1977)).

Here, the 1997 action as pled lacks complete diversity. However, based on extrinsic evidence, the parties have asserted that as of June 2, 1997, the commencement of this action, both plaintiff and Global were citizens of New Jersey.[9] (*See* 97 CV 3865 Compl. ¶¶ 1, 3; Defs.' Mot. at 1.) Global and USOC do not dispute that plaintiff is a citizen of New Jersey for purposes of diversity jurisdiction;

---

**9.** Although not raised by any of the parties, the fact that the record in the 1997 case does not allege Jedrejcic to be a citizen of the United States or a citizen or subject of a foreign state caused concern for this court because Jedrejcic describes himself as "a Croatian born national," (Pl.'s Opp'n Mot. at 2), and diversity is defeated by the foreign citizenship of both plaintiff and at least one alien defendant. *See Matimak Trading Do. v. Khalily,* 118 F.3d 76, 86 (2d Cir.1997), *cert. denied,* 522 U.S. 1091, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998); *Thompson v. New York City Transit Auth.,* 1999 WL 167710 at *1, No. 95 Civ. 4934, 1999 U.S. Dist. LEXIS 3963, at *3 (E.D.N.Y. Feb. 19, 1999) (citing *Lloyds Bank v. Norkin,* 817 F.Supp. 414 (S.D.N.Y.1993)); *Inarco Int'l Bank N.V. v. Lazard Freres & Co.,* 1998 WL 427618 at *2, No. 97 Civ. 378, 1998 U.S. Dist. LEXIS 11574, at *5 (S.D.N.Y. July 29, 1998). Since the Croatian Olympic Committee may be an alien defendant, Jedrejcic must have United

States citizenship to satisfy the diversity requirement. *See id.* However, the court notes that service was not executed as to COC in the 1997 action. Additionally, given plaintiff's *pro se* status, the fact that submissions in the 1996 action and the 1997 action have on occasion addressed both cases, and because Judge Ross referred the motion in the 1996 action to me "in conjunction with defendants' summary judgment motion in 97 CV 3865," the court will assume for purposes of these motions that plaintiff's allegation of United States citizenship in the 1997 action applies to the 1996 action as well. Thus, plaintiff satisfies the U.S. citizenship requirement. (*See* 96 CV 2506 Am. Verified Compl., dated June 17, 1996); *Action S.A. v. Marc Rich & Co.,* 951 F.2d 504, 506 (1991) (defendants' assertion of American citizenship in prior action considered in determining he did not lose his citizenship in the case then at bar).

Coca–Cola does not dispute that plaintiff was a New Jersey resident during the relevant time period. Rather, they claim that as of June 2, 1997, Global was incorporated in New York and had moved its principal place of business to New Jersey, rendering the parties non-diverse.[10] (See Affidavit of Sead Dizdarevic, dated December 4, 1998, ¶ 3; Defs.' Mem. at 2–3; Defs.' Supplemental Mem. at 2.) Plaintiff disputes defendants' contention that Global moved its principal place of business from New York to New Jersey. (Tr. at 82, 87–89.) Accordingly, the Court looks to the record in this action to determine whether it could retain subject matter jurisdiction if the plaintiff were to amend his complaint pursuant to 28 U.S.C. § 1653. See Dillard, 928 F.Supp. at 1321–22; Goodman, 1999 WL 33030 at *2, 1999 U.S. Dist. LEXIS 705, at *6; Ferrara, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS 2872, at *7; Keith v. Black Diamond Advisors, Inc., 48 F.Supp.2d 326, 328 (S.D.N.Y.1999); Peters, 1999 WL 135231, 1999 U.S. Dist. LEXIS 2797.

After careful consideration of the evidence and for the reasons stated below, the court finds that, even if plaintiff were granted leave to replead in this matter, plaintiff has failed to establish that there is complete diversity between the parties. Therefore, the court respectfully recommends that the 1997 action be dismissed for lack of subject matter jurisdiction.[11]

### GLOBAL'S PRINCIPAL PLACE OF BUSINESS WAS NEW JERSEY AT THE COMMENCEMENT OF THE 1997 ACTION

For diversity purposes, a corporation is deemed to be a citizen of the state in which it is incorporated and of the state where it has its principal place of business.

See 28 U.S.C. § 1332(c)(1); see also Pinnacle, 101 F.3d at 906; In re Balfour MacLaine Int'l Ltd., 85 F.3d 68, 76 (2d Cir.1996); Peters, 1999 WL 135231 at *2, 1999 U.S. Dist. LEXIS 2797, at *11; Bonnie & Co. Fashions, 18 F.Supp.2d at 301. Several tests exist to determine a corporation's principal place of business. Farella, 1997 WL 181166 at *1, 1997 U.S. Dist. LEXIS 4740, at *3 (citing Pinnacle, 101 F.3d at 906, and cases employing the "total activity test," the "place of activities test" and the "nerve center test"). In this Circuit, the principal place of business of a corporation is determined by one of two tests: "either the 'nerve center test' for corporations with operations spread over numerous states or the 'place of the activities/public impact test' for corporations with more localized operations." Royal Indem. Co. v. Wyckoff Heights Hosp., 953 F.Supp. 460 (E.D.N.Y.1996) (quoting R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 654–55 (2d Cir.1979)); see also Peters, 1999 WL 135231 at *5, 1999 U.S. Dist. LEXIS 2797, at *15 (recognizing that this Circuit follows two tests and that applicability depends on the nature and structure of the corporation); Hungarian Broad. Corp. v. Coleman and Co. Sec., Inc., 1996 WL 374173 at *2, No. 96 Civ. 48, 1996 U.S. Dist. LEXIS 9204, at *3 (S.D.N.Y. July 2, 1996). The nerve center test looks to "those factors that identify the place where overall corporate policy originates" or the "nerve center from which it radiates out to its constituent parts and from which its officers direct, control and coordinate all activities without regard to locale, in the furtherance of the corporate objectives." Royal Indem., 953 F.Supp. at 462 (quoting R.G. Barry, 612 F.2d at 655); see also Peters, 1999 WL 135231 at

---

10. The parties stipulated that the complaint in the 1997 action is amended to list Jedrejcic as a resident of New Jersey. (Tr. at 4.) The court is aware that the mere assertion of a party's residence is insufficient to establish citizenship for diversity purposes, see Canedy v. Liberty Mutual Ins. Co., 126 F.3d 100, 102 (2d Cir.1997), and that parties may not consent to the existence of subject matter jurisdiction. See Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) (noting no action of the parties can confer subject matter jurisdiction upon a federal court and, as such, their consent is irrele-

vant). However, as discussed above, the court need not determine whether Jedrejcic established a new domicile in New Jersey as of June 2, 1997. (See supra n. 7.)

11. Because this court recommends that the 1997 action be dismissed for lack of subject matter jurisdiction based upon extrinsic evidence presented by the parties, the court need not address defendants' contention that the complaint itself fails to allege or establish complete diversity as between all parties.

*5, 1999 U.S. Dist. LEXIS 2797, at *16. "[T]he 'nerve center' test places the principal place of business at the location of the corporations's headquarters." *Peters*, 1999 WL 135231 at *5, 1999 U.S. Dist. LEXIS 2797, at *16.

▆ In cases where corporate operations are centralized and business policies and management decisions are conducted in a single state, courts focus on "the state in which a corporation has its most extensive contacts with or greatest impact on, the general public." *Dali*, 1996 WL 592723 at *2, 1996 U.S. Dist. LEXIS 15263, at *3 (quoting *R.G. Barry*, 612 F.2d at 655); *see also Pinnacle*, 101 F.3d at 906; *Peters*, 1999 WL 135231 at *6, 1999 U.S. Dist. LEXIS 2797, at *17 (explaining that where corporations are centralized, courts apply the "place of operations" or "locus of operations" test to determine principal place of business and noting that "the location in which the corporation has its most extensive contact with, or its greatest impact on, the general public" is determinative).

▆ Global was a New York corporation from December 1992 until October 1997. (Tr. at 14, 35, 92 and Ex. 4.) Defendants concede that, at the time the first action was filed, Global's principal place of business was in fact New York. (Supplemental Mem. at 2; Affidavit of Sead Dizdarevic ¶ 3.) However, defendants claim that at the time this action was filed, June 2, 1997, Global was incorporated in New York but had moved its principal place of business to New Jersey in April 1997. (Tr. at 8.)

In support of this contention, defendants rely upon the testimony and affidavit of Sead Dizdarevic ("Dizdarevic"), the President of Global, who makes all of the major decisions affecting the corporation. (*Id.* at 7.) At the evidentiary hearing, Dizdarevic described the nature of his business, explaining that "Global provides hospitality travel services for the sponsors of the United States Olympic Committee, participating mostly at the games outside of the United States." (*Id.* at 6.)[12]

Dizdarevic testified that Global's clients are multi-national corporations located in the United States and abroad. (*Id.* at 57.) Specifically, in 1997 Global had only five clients in the United States and nine overseas. (*Id.* at 56–57.) As Global is a small company, all of Global's employees "work together," securing "hotel rooms, olympic event tickets, contracting transportation and contracting restaurants, and food and beverage services for the hotels" for the summer and winter Olympics. (*Id.* at 7–8, 33.) Although every employee spends some time traveling, (*id.* at 33.), they all work at Global's office. (*See id.* 18–19.) Global has had offices in only two locations, New York and New Jersey. (*Id.* at 35–36.) ("[u]ntil April 1997 we have conducted business at 260 Christopher lane, and from April 1997, we have conducted [sic] 500 Hills Drive in New Jersey.") According to Dizdarevic, from April 1997 to the present, Global has conducted business solely from its office at 500 Hills Drive in Bedminster, New Jersey. (*Id.* at 18–19.) At the time the 1997 action was filed, Global had five employees, all of whom worked at its office in New Jersey. (*Id.*)

In the instant case, analyzing the jurisdictional question under either the "nerve center" test or the "locus of operations/public impact" test would yield the same determination: that on June 2, 1997, Global's principal place of business was New Jersey. *See Pinnacle*, 101 F.3d at 906; *Peters*, 1999 WL 135231 at *4, 1999 U.S. Dist. LEXIS 2797, at *20–21; *Dali*, 1996 U.S. Dist. LEXIS 15263, at 5, 1996 WL 592723 at *2; *Hungarian Broad. Corp.*, 1996 WL 374173 at *2, 1996 U.S. Dist. LEXIS 9204, at 4–5; *Ellis*, 929 F.Supp. at 755. However, since Global has had offices in only two locations, New York and New Jersey, (Tr. at 35–36), the "locus of operations/public impact" test is more applicable because Global is a centralized corporation. *See Peters*, 1999 WL 135231 at *6 1999 U.S. Dist. LEXIS 2797, at *17 (determining corporation to be centralized, using standards set forth in *Scot Typewriter Co. v.*

---

**12.** Dizdarevic stated that he did not know who Global's corporate officers were because "[i]t's a small corporation," and that Global did not hold annual corporate meetings. (Tr. at 32.) Although these factors are often considered under the "nerve center" test, they are not necessarily probative under the public impact test utilized here.

*Underwood Corp.*, 170 F.Supp. 862, 865 (S.D.N.Y.1959), because corporation had offices in only New York and California); *Hungarian Broad. Corp.*, 1996 WL 374173 at *2, 1996 U.S. Dist. LEXIS 9204, at *3 (determining test to be where corporation "has its most extensive contacts, or greatest impact on, the general public" because corporation interacted "with other entities essentially in two locations, New York and Hungary"); *Compucon Distribs. of New England, Inc. v. Cooper*, 685 F.Supp. 424, 425 (S.D.N.Y.1988) (holding that application of nerve center test was inappropriate because corporation at issue conducted business from only two locations, New York and Massachusetts). *But see Royal Indem. Co.*, 953 F.Supp. at 462 (applying nerve center test where corporation conducting business in all fifty states had offices throughout the nation). "[T]he determination is relatively straightforward when the corporation generally conducts its business policy and makes management decisions in a single state." *Farella*, 1997 WL 181166 at *1, 1997 U.S. Dist. LEXIS 4740, at *3 (citing *Pinnacle*, 101 F.3d at 906). Since Global conducted business policy and made management decisions from its New York office prior to April 1997 and subsequently did so only from its New Jersey office, "the state in which a corporation has its most extensive contacts with or greatest impact on, the general public" is determinative. *Dali*, 1996 WL 592723 at *2, 1996 U.S. Dist. LEXIS 15263, at *3 (quoting *R.G. Barry*, 612 F.2d at 655); *see also Pinnacle*, 101 F.3d at 906; *Peters*, 1999 WL 135231 at *6, 1999 U.S. Dist. LEXIS 2797, at *17. Consequently, the court analyzes the jurisdictional question in this case under the "locus of operations" test rather than the "nerve center test."

Under this test, plaintiff fails to meet his burden of demonstrating by a preponderance of the evidence that New York was Global's "place of most extensive public contact." *See Pinnacle*, 101 F.3d at 906; *Peters*, 1999 WL 135231 at *5, 1999 U.S. Dist. LEXIS 2797, at *20–21; *Dali*, 1996 WL 592723 at *2, 1996 U.S. Dist. LEXIS 15263, at 6–7; *Hungarian Broad. Corp.*, 1996 WL 374173 at , 1996 U.S. Dist. LEXIS 9204, at 4–5; *Ellis*, 929 F.Supp. at 755.

Dizdarevic testified that, at the time plaintiff began this action, Global's sole office was in New Jersey, (Tr. 19.), as Global had previously moved its only office from 260 Christopher Lane, Staten Island, New York to 500 Hills Drive, Bedminster, New Jersey in April, 1997 (*Id.* at 18–19.) ("We signed the lease at the end of March" and "we were operational by mid-April in New Jersey.".) Defendants submitted a redacted copy of a lease agreement demonstrating that on March 26, 1997, Global entered into a lease for its New Jersey office, which was to begin on or about April 1, 1997. (*Id.* at 9 and Exs. 2 and 2A.) Defendants also produced a copy of Global's rent check for April 1997, which, according to Dizdarevic, represented the last month's rent for Global's New York office.[13] (*Id.* at 14.)

To further support their claim, defendants submitted copies of a Bell Atlantic phone bill that purports to bill for installation services at the New Jersey site. (*Id.* at 12 and Ex. 3; *see also* Tr. at 11 ("By April 1 we were pretty much done. We were only waiting for the phone company to install the new line....I believe they had installed that some time between the 14th and 18th of

**13.** Challenging the validity of this evidence, plaintiff emphasized in his submissions to the court and at the evidentiary hearing that two dates appear on the back of the canceled check, namely April 9, 1997 and April 9, 1998. (Tr. at 80–81.) He also questioned why defendants originally produced only a copy of the front of the check on June 9, 1998, and noted that the submission that was attached to Dizdarevic's affidavit, dated December 4, 1998, had a number in the bottom right hand corner that did not appear on the photocopy of the check that Global first produced. (*See* Dizdarevic Affidavit, dated December 4, 1998, attached to Letter to the Court from Attorney Frohman, dated December 7,

1998; Plaintiff's Exs. 2 and 3, Tr. at 76–79.) The Court finds Dizdarevic's explanation of the discrepancies to be credible, namely that the first copy was provided from Global's office files whereas the second submission was provided "from a bank statement after we ha[d] received the check that was cashed." (Tr. at 78.) In addition, although it appears that there may be two different dates on the back of the canceled check, there is insufficient information before the court to evaluate what, if anything, this signifies. (*See id.*) Finally, the Court notes that the rent check, although considered, was not dispositive in determining Global's principal place of business as of June 2, 1997.

April.").) Dizdarevic also testified that all of Global's furniture, fixtures, and equipment were moved from the New York location to the New Jersey site and submitted a UPS bill and a DHL bill to support this assertion.[14] (*Id.* at 13–21 and Exs. 7 and 8.) Dizdarevic explained that although Global's staff travels to various sites in connection with the Olympic games, his employees' day to day activities are largely conducted from Global's office in New Jersey and include "securing hotel rooms, Olympic event tickets, and contracting transportation, restaurants, and food and beverage services for the summer and winter Olympics." (*Id.* at 7–8, 56–57.) Furthermore, as of mid-April, 1997, Global kept its corporate books and records in New Jersey, performed all of its accounting functions there, and all of its correspondence was generated from and sent to New Jersey. (*Id.* at 28–29.) After April 1997, Global did not rent or occupy any space in New York for the purpose of conducting business nor did it rent or occupy any other office, except for that at 500 Hills Drive, Bedminster, New Jersey, for the purpose of conducting business. (*Id.* at 18–20.) This evidence supports a finding that by mid-April 1997, a substantial portion of Global's corporate activity was New Jersey rather than New York. *See Ellis v. Provident Life & Accident Ins. Co.*, 929 F.Supp. 751, 754 (S.D.N.Y.1996) (stressing importance of geographical location of substantial corporate activity to determination of principal place of business); *St. Charles Cable Television, Inc., v. Eagles Comtronics, Inc.*, 664 F.Supp. 824, 828 (S.D.N.Y.1987) (using fact that corporation's employees ran "the cable system's day-to-day operations, such as maintaining the equipment, handling subscriber complaints, and receiving subscriber payments" from Louisiana as competent evidence demonstrat-

ing that plaintiff's "most extensive contacts" were with Louisiana despite fact that corporation received executive and administrative services from New York).

In addition, according to Dizdarevic, all four of Global's employees, who had previously worked at the New York address, were working at the New Jersey location by mid-April. Dizdarevic also testified that Global hired an additional employee specifically to work in the New Jersey office. (Tr. at 18.) This too suggests that Global's principal place of business was New Jersey. *See Ellis*, 929 F.Supp. at 754 (noting *Atkinson* Court held corporation's principal place of business was in Connecticut because corporation staff was based there and its employees had little contact with New York residents despite fact that corporation derived most of its revenue from New York) (citing *Atkinson v. B.C.C. Associates, Inc.*, 1992 WL 51568, No. 91 Civ. 4443, 1992 U.S. Dist. LEXIS 2824 (S.D.N.Y. Mar. 9, 1992)); *R.G. Barry*, 612 F.2d at 655 (considering location of employees when determining principal place of business) (citing *Inland Rubber Corp. v. Triple A Tire Serv., Inc.*, 220 F.Supp. 490 (S.D.N.Y.1963)); *Gonzalez v. Supermarkets Gen. Corp.*, 671 F.Supp. 7, 9 (S.D.N.Y.1987) (citing *R.G. Barry* and *Inland Rubber* for considering the location of employees in determining a corporations' locus of operations).

Courts have also considered the location of a corporation's bank accounts in determining a corporation's principal place of business. Global has bank accounts in New York, New Jersey, Australia, Germany, and other countries. (Tr. at 60.) Dizdarevic testified at the hearing that Global conducted five percent of its 1997 business during the period from January 1, 1997 through March 31, 1997 at the 260 Christopher Lane, Staten Island,

---

14. In response, plaintiff challenges the validity of this evidence and argues that the bill of lading that defendants supplied does not include office equipment but rather lists household items. (Tr. at 62; *see also id.* at 63 and Ex. 1.) However, the Court finds Dizdarevic's testimony that Global used the shipped items for a business purpose to be credible on this issue. (*Id.* at 63–64) ("China box, that's the china that we have purchased to be shipped to Japan, which we shipped to them.... I believe there was [sic] two movings

[sic] because one moving [sic] there was a desk, there was a chair, there was a conference table. There was the unit. That's what they referred here as 7F wardrobe set.' It's actually a unit that we had custom made for our Staten Island [sic] that we transferred over there. And then wardrobe delivered—it's another closet for the storage actually. It's not for wardrobe. The picture box is all our posters and so on. It doesn't show here the desks. It does show china box and the linen. Those are linens that we

New York address. (*Id.* at 5 and Ex. 1.) Global deposited this amount in its New York business bank account. (*Id.* at 57.) Global continues to maintain this bank account with Citibank in New York for the purpose of exchanging foreign currency, approximately eighty-five percent of its payments, as its New Jersey bank account is not capable of this service. (*Id.* at 60–61.) Dizdarevic further testified that Global derived eighty-four percent of its 1997 business from the 500 Hills Drive, Bedminster, New Jersey address during the period from April 1, 1997 to June 30, 1997. (*Id.* at 57 and Ex. 1.) Global deposited these monies in a New Jersey bank account. (*Id.* at 57.) Although Global maintained a New York bank account for the sole purpose of exchanging foreign currency, in the aggregate, the evidence demonstrates that during the relevant time period, Global's most extensive public contacts were in New Jersey.

While not dispositive in determining principal place of business, regulatory and corporate income tax filings are factors to be considered and, in the instant case, also indicate that Global's "locus of operations" as of June 2, 1997 was New Jersey. *See Peters*, 1999 WL 135231 at *6, 1999 U.S. Dist. LEXIS 2797, at *21; *Hungarian Broad. Corp.*, 1996 WL 374173 at *2, 1996 U.S. Dist. LEXIS 9204, at *9; *Dali*, 1996 U.S. Dist. LEXIS 15263, at *8. For example, Global had a New Jersey agent during the relevant time period. (Tr. at 14; *see also id.* at 17 and Ex. 6.) Defendants provided a form entitled "New Jersey Department of State Division of Commercial Recording Application for Certificate of Authority" that Global filed on February 6, 1997 and which names a registered agent located in New Jersey.[15] (*See id.* at 14 and Ex. 4.) Global paid taxes to both New York and New Jersey in 1997. (*Id.* at 16, 53.) Defendants also provided the court with a copy of an income tax information form, dated May 6, 1997, which changed Global's business location to 500 Hills Drive, Bedminster, New Jersey.[16] (*Id.* at 16 and Ex. 5.) Defendants also submitted a copy of a form entitled "New Jersey Certificate of Change of Registered Office or Registered Agent," signed by Dizdarevic on behalf of Global and dated June 6, 1997. (*Id.* at 17 and Ex. 6.) These documents further indicate that Global's "locus of operations" was in New Jersey as of mid-April 1997.[17] *See Peters*, 1999 WL 135231 at *6, 1999 U.S. Dist. LEXIS 2797, at *21; *Hungarian Broadcasting Corp.*, 1996 WL 374173 at *2, 1996 U.S. Dist. LEXIS 9204, at *9; *Dali*, 1996 WL 592723 at *2, 1996 U.S. Dist. LEXIS 15263, at *8.

Plaintiff argues that Global was and still is doing business in New York, and points to Global's New York clientele, specifically naming the following clients: "Merrill Lynch, Time Inc., Sports Illustrated, Texaco, American Express, Fieldcrest Cannon, Visa, [and] Baush and Lomb." (Letter to the court from Ante Jedrejcic, dated December 11, 1998, ¶ 10.) However, Jedrejcic offers no proof that any of these alleged New York clients were clients of Global during the relevant time period. Jedrejcic last worked for Global in 1994, (Tr. at 96), and filed this action three years later. Thus, he has no personal knowledge of the identity of Global's clientele as of June 2, 1997. At the hearing, Global

---

purchased for Nagano games that we shipped in July.".)

15. Plaintiff argues that this form discredits Dizdarevic's testimony because he listed his New Jersey home address of 6 Springcroft Road, Far Hills, as Global's "main office or headquarters." (Tr. at 14 and Ex. 4; *id.* at 35–36, 43–44.) Although this may place Dizdarevic's credibility in issue, it does not require that his testimony be disregarded. *See Dali*, 1996 WL 592723 at *2, 1996 U.S. Dist. LEXIS 15263, at *8 (where court considered witness' deposition testimony regarding location of corporation's employees even though his credibility was at issue). Furthermore, this evidence is not relevant to the court's inquiry into Global's principal place of business as of June 2, 1997 because it does not contradict defendants' claim that Global moved its principal place of business in April 1997 as defendants do not rely on the 6 Springcroft Road, Far Hills, New Jersey address to defeat diversity, but rather the 500 Hills Drive, Bedminster, New Jersey address. (Tr. at 14 and Ex. 4; *id.* at 35–36, 43–44.)

16. It appears that this form was signed by Global's Secretary for the purpose of changing Global's business location from 6 Springcroft Road, Far Hills, New Jersey to 500 Hills Drive, Bedminster, New Jersey. (Tr. at 14 and Ex. 4.)

17. Whereas the filing dates of Ex. 4 and Ex. 5 render these submissions relevant, Ex. 6 is dated June 6, 1997 and, therefore, is not considered by the court.

offered evidence that it had only one client in New York during the relevant period, and that this client provided between twelve and eighteen percent of Global's income in 1997.[18] (*Id.* at 54–56.) Additionally, any allegation that Global is still doing business in New York today is not relevant to determining Global's principal place of business at the time this action was filed. *See Advani,* 140 F.3d at 157; *Maryland Casualty Co.,* 23 F.3d at 622 (citing *Anderson,* 138 U.S. at 702–703, 11 S.Ct. 449); *Bonnie & Co. Fashions,* 18 F.Supp.2d at 301.

Defendants also submitted an affidavit from Dizdarevic detailing certain income deposits Global made from April 16, 1997 through June 23, 1997. (Dizdarevic Affidavit, dated December 4, 1998; Tr. at 4 and Ex. 1.) The affidavit demonstrates that Global derived its income during this period from clients in Texas, a client in New Jersey, and tax refunds from New York City and New York State. (*Id.*) This evidence does not support plaintiff's contention that Global's most extensive public contacts were in New York as of June 2, 1997.

In addition, plaintiff offered two photographs that he took on June 17, 1998 at Global's office in Staten Island as evidence that Global was still doing business at the 260 Christopher Lane address in New York at the same time Global had its new office at 500 Hills Drive in Bedminster, New Jersey. (*See* Tr. at 93 and Exs. 4–5.) The first photograph depicts the intercom at the entrance to the building at 260 Christopher Lane. (Pl.'s Ex. 4.) Although the listings of the building's tenants are illegible in the first photograph, Jedrejcic testified that they included Jet Set Sports, the name under which Global conducted business. (*See* Tr. at 93, 97.) The second photograph shows defendant's office door, which still bore a sign with the name "Jet Set Sports." (Pl.'s Ex. 5). Jedrejcic testified that this sign was on a different door when he worked there for

Global in 1994. (*Id.* at 96.) Jedrejcic admitted that he knocked on the door on June 17, 1998, but that no one answered. Plaintiff also testified that when he inquired of an occupant on the same floor he was told, " 'Oh, nobody is there.' " (*Id.* at 97.) These photographs, coupled with plaintiff's testimony, fail to demonstrate that Global was doing business in New York at the time this lawsuit was filed. Plaintiff has not presented persuasive evidence that Global still maintained its New York office on June 2, 1997, much less in June 1998.[19] Even assuming that Global was still in possession of the Staten Island office during the relevant period, plaintiff has not shown that the office was occupied, or that Global conducted any business from that office. Thus, the photographs taken on June 17, 1998 do not prove the actual location of Global's principal place of business as of June 2, 1997. *See Advani,* 140 F.3d at 157; *Maryland Casualty Co.,* 23 F.3d at 622 (citing *Anderson,* 138 U.S. at 702–703, 11 S.Ct. 449); *Bonnie & Co. Fashions,* 18 F.Supp.2d at 301; *Dali,* 1996 U.S. Dist. LEXIS 15263, at *8.

In sum, the court finds that Jedrejcic has submitted no evidence tending to show that Global's principal place of business at the time he filed this action was anywhere other than New Jersey and, therefore, has failed to prove by a preponderance of the competent evidence that the court has diversity jurisdiction in this case. *See Advani,* 140 F.3d at 157; *Peters,* 1999 WL 135231 at *2, 1999 U.S. Dist. LEXIS 2797, at *10; *Goodman,* 1999 WL 228396, 1999 U.S. Dist. LEXIS 705, at *6; *Bonnie & Co. Fashions,* 18 F.Supp.2d at 301; *Dimaggio,* 1999 WL 675979 at *3, 1998 U.S. Dist. LEXIS 13468, at *8; *Dali,* 1996 WL 592723 at *1, 1996 U.S. Dist. LEXIS 15263, at *5. Accordingly, I respectfully recommend that defendants' motion to dismiss be granted and that this case be dismissed without prejudice to refile the action in state court.[20]

---

18. Global also acknowledged that it did not have any clients located in New Jersey during the relevant time period. (Tr. at 56.)

19. Moreover, as explained above, the question is not whether Global is still doing business in New York today but where its principal place of business was at the time this action was filed. *See Advani,* 140 F.3d at 157.

20. Although the court finds that it does not have diversity jurisdiction over the 1997 action, under section 205 of the Civil Practice Law and Rules,

## DISCUSSION: RULE 60(b) MOTION TO REOPEN THE 1996 ACTION

### LEGAL STANDARDS

■ Plaintiff seeks relief from the June 25, 1996 Dismissal Order pursuant to Rule 60(b).[21] Because he is a *pro se* litigant, the court will construe his motion broadly. *See Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir. 1983).

Rule 60(b) provides in pertinent part as follows:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Civ.P. 60(b). Rule 60(b) was designed to strike a balance between the interests of fairness and the finality of judgments. *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1144 (2d Cir.1994) (collecting cases); *United States v. Cirami,* 535 F.2d 736, 741 (2d Cir. 1976); *United States v. Gelb,* No. 86 Civ. 1552, 1991 U.S. Dist. LEXIS 1507, at *10 (S.D.N.Y. Feb. 4, 1991). "The finality interest is obvious. It is unsettling to litigants to have long-resolved cases adjudicated again after long delay; their right to rely on a rendered decision is thus jeopardized." *Gelb,* 1991 WL 20011 at *3, 1991 U.S. Dist. LEXIS 1507, at *10. It is equally important though that meritorious claims be heard. *Id.* (stating "in those cases where that chance [an opportunity for meritorious claims to be aired] is by-passed, the Court must ensure that the foreclosure of the claim was fairly and honestly attained").

"Motions under Rule 60(b) are addressed to the sound discretion of the district court and are generally granted only upon a showing of exceptional circumstances." *Mendell In Behalf of Viacom, Inc. v. Gollust,* 909 F.2d 724, 731 (2d Cir.1990) (quoting *Nemaiz-*

---

plaintiff may bring this action in the courts of the state of New York:

> If an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of the commencement of the prior action and that service upon defendant is effected within such ·six-month period.

N.Y. C.P.L.R. § 205 (McKinney 1994).

21. Because a "Rule 60(b) motion 'may not be used as a substitute for appeal,' " the court of appeals has the authority to review only the denial of a Rule 60(b) motion, not to examine the district court's original dismissal order. *Dow Jones & Co.,* 1998 WL 2370 at *2, 1998 U.S.App. LEXIS 77, at *8 (quoting *Matarese v. LeFevre,*

801 F.2d 98, 107 (2d Cir.1986)); *see also Fowlkes,* 1997 WL 752547 at *1, 1997 U.S.App. LEXIS 34189, at *3 (because "dismissal without prejudice does not preclude another action on the same claims, a plaintiff who is permitted to appeal following a voluntary dismissal without prejudice will effectively have secured an otherwise unavailable interlocutory appeal") (citing *Chappelle v. Beacon Communications Corp.,* 84 F.3d 652, 654 (2d Cir.1996)). However, the court notes that in the instant case a judgment has yet to be issued and the Clerk of the Court never closed this case pursuant to the Dismissal Order in 1996. Consequently, plaintiff may move the district court for reconsideration, re-argument, or vacatur within ten days from the entry of judgment issued pursuant to this decision. *See* Rule 59(e) ("A motion to alter or amend the judgment shall be served no later than ten days after entry of the judgment."); *Woodard v. Hardenfelder,* 845 F.Supp. 960, 964 (E.D.N.Y. 1994). Also, Jedrejcic may appeal both the dismissal of his underlying claim and the denial of his Rule 60(b) motion within thirty days of the entry of judgment pursuant to Fed.R.App.P. 4(a)(1).

er v. Baker, 793 F.2d 58, 63 (2d Cir.1986), aff'd, 501 U.S. 115, 111 S.Ct. 2173, 115 L.Ed.2d 109 (1991)); Interactive, 1998 WL 35131 at *2, 1998 U.S. Dist. LEXIS 801, at *7. "Courts typically require that the evidence in support of the motion for relief [under Rule 60(b)] be 'highly convincing,' that a party show good cause for the failure to act sooner, and that no undue hardship be imposed on other parties." Gonzalez v. Gannett Satellite Info. Network, Inc., 903 F.Supp. 329, 331 (N.D.N.Y.1995), aff'd, 101 F.3d 109, 1996 WL 137661 (2d Cir.1996).

■ The strict evidentiary requirements apply as well to pro se litigants. See Fetik, 1999 WL 459805 at *3, 1999 U.S. Dist. LEXIS 9755, at *10 (noting that pro se plaintiff "is not excused from producing 'highly convincing' evidence in support of her motion to vacate a final judgment") (quoting Gwynn, 1991 WL 125185 at *3, 1991 U.S. Dist. LEXIS 8910, at *11–12) (quoting Kotlicky, 817 F.2d at 9) (quoting Cirami, 563 F.2d at 33). Moreover, "that a litigant is pro se, standing alone, is an insufficient basis for relief under Rule 60(b)." Ovadiah v. New York Assoc. for New Ams., 1997 WL 342411 at *5, 95 Civ. 10523, 1997 U.S. Dist. LEXIS 8803, at *14 (S.D.N.Y. June 23, 1997) (quoting Colon v. LeFevre, 1989 WL 131324 at *1, 1989 U.S. Dist. LEXIS 12969, at *3 (N.D.N.Y. Oct. 30, 1989)); Salter v. Hooker Chem. Durez Plastic & Chem. Div., 119 F.R.D. 7, 8 (W.D.N.Y. 1988) (where pro se litigant failed to conduct discovery to provide factual support for his claim, the court held that "any failings attributable to plaintiff's former pro se status could not be a basis for relief under Rule 60(b).").

■ To grant relief "a court must find that (1) the circumstances of the case present grounds justifying relief and (2) the movant possesses a meritorious claim in the first instance." Cobos v. Adelphi Univ., 179

22. See Fed.R.Civ.P. 12(b)(2).

23. See Fed.R.Civ.P. 12(b)(4).

24. See Fed.R.Civ.P. 12(b)(5).

25. Clause 6 is also not available to Jedrejic to the extent he seeks relief as a result of allegations of neglect by his former attorney, as Rule 60(b)(6) does not provide relief based upon gross negligence by one's attorney. See Faulk v. The

F.R.D. 381, 385 (E.D.N.Y.1998) (citing cases). Moreover, "[a] movant's burden is even more formidable where the movant has made a deliberate choice...." Rand Int'l Leisure Prods., Ltd. v. TekSource, L.C., 1998 WL 372356 at *1, No. 97 Civ. 319, U.S. Dist. LEXIS (E.D.N.Y. July 2, 1998) (citing Nemaizer, 793 F.2d at 63); see also Ackermann v. United States, 340 U.S. 193, 198, 71 S.Ct. 209, 95 L.Ed. 207 (1950) ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."). Here, plaintiff does not specify which of the six bases for relief under Rule 60(b) he seeks to invoke. However, a review of plaintiff's submissions reveals that only clauses (1) and (3) are potentially applicable as there is no claim of newly discovered evidence[22] and the judgment plaintiff seeks to vacate is not void[23] nor has it been satisfied.[24] In addition, clause (6) is inapplicable because plaintiff's asserted grounds for relief are recognized in clauses (1) and (3). See Nemaizer v. Baker, 793 F.2d 58, 63 (2d Cir. 1986) (relief under Rule 60(b)(6) is only appropriate when "the asserted grounds for relief are not recognized in clauses (1)–(5) of the rule."); Cobos v. Adelphi Univ., 179 F.R.D. 381, 386 n. 5 (E.D.N.Y.1998) ("Clauses (1) and (6) are mutually exclusive."); Interactive Edge, Inc. v. Martise, 1998 WL 35131 at *4, No. 97 Civ. 3354, 1998 U.S. Dist. LEXIS 801, at *7 (S.D.N.Y. Jan. 30, 1998) (noting the sixth subsection "is properly invoked only ... when the asserted grounds for relief are not recognized in clauses (1)–(5)") (quoting Nemaizer, 793 F.2d at 63).[25] Because the court finds that plaintiff has failed to satisfy the requirements of Rule 60(b)(1) or 60(b)(3) and because the court further finds that Jedrejic's motion is untimely, the court respectfully recommends that his motion be denied.

Estate of Otis Bantum, 1995 WL 20328 at *2, 89 Civ. 4374, 1995 U.S. Dist. LEXIS 481, at *7 (S.D.N.Y. Jan. 19, 1995). Moreover, relief under Rule 60(b)(6) is only appropriate where the moving party demonstrates "extraordinary circumstances justifying relief" and when the judgment may work "an extreme and undue hardship," see Nemaizer, 793 F.2d at 63, circumstances not present in the instant case.

## TIMELINESS OF THE MOTION

■ As a threshold matter, a motion for relief under Rule 60(b)(1) or Rule 60(b)(3) must be filed "within a reasonable time" and "not more than one year after the order ... was ... entered." Fed.R.Civ.P. 60(b); *see also Foley v. United States*, 645 F.2d 155, 157 (2d Cir.1981). Plaintiff's motion is not timely, as he filed it on July 13, 1998, two years after the June 25, 1996 order dismissing his case. However, Jedrejcic argues "that he understood that his filing of the June 2, 1997 amended complaint,[26] designated by the Clerk's Office as 97 CV 3865, was the equivalent of a motion to vacate the judgment in 96 CV 2505, and was filed within the one year period required by Rule 60(b)." (*See* Mem. and Orders dated Dec. 2, 1998 and Apr. 14, 1998; Pl.'s 7/6/98 Mem, at 5–6; Pl.'s Mem., dated Apr. 9, 1998 ("Pl's 4/9/98 Mem.").)[27] Given plaintiff's *pro se* status, the court will treat plaintiff's complaint as a motion to vacate under Rule 60(b). Because his complaint was filed on June 2, 1997 and the order of dismissal was entered on June 25, 1996, plaintiff's motion was made within the one year limitations period provided for in Rule 60(b). However, because "the one-year limit is an outside extreme, not an automatically available time for filing the motion," *Foley*, 645 F.2d at 157, the court must determine whether Jedrejic's motion was filed within a "reasonable time."

■ "In determining what constitutes a reasonable time, the court must consider the particular circumstances of the case, and balance the interest in the finality of judgments against the reason for the delay, as well as consider the possibility of prejudice to other parties." *McKenna v. Ward*, 1997 WL 66779 at *5, No. 88 Civ. 513, 1997 U.S. Dist. LEXIS 1609, at *11 (S.D.N.Y. Feb. 18, 1997); *see also Paddington*, 34 F.3d at 1147, n. 9. Here, plaintiff filed his complaint on June 2, 1997, nearly twelve months after Judge Ross's June 25, 1996 order dismissing the

1996 action without prejudice. Plaintiff argues that this twelve month delay was caused by a breakdown in communication between plaintiff and his counsel, Spinelli. (*See* Pl.'s 7/6/98 Mem. at 3–5 and Exs. D, H, I, and K.) In support of his argument, plaintiff offers several letters between himself and Spinelli. The correspondence reveals that Spinelli informed Jedrejcic by letter dated October 11, 1996 that his case had been dismissed for lack of diversity jurisdiction and suggested that Jedrejcic consider filing his action in New York State Supreme Court, Richmond County. (*Id.* Ex. E.) Jedrejcic contends that after receiving Spinelli's letter, he told Spinelli that he agreed that his case should be filed in "civil court"[28] but that Spinelli refused to pursue the matter as he believed that plaintiff did not "have a case against the defendants." (*Id.* at 4.) By letter dated December 4, 1996, Spinelli attempted to end his representation of plaintiff, citing their "conflicting views regarding" plaintiff's case. (*Id.* Ex. G.) In response, Jedrejcic refused to release Spinelli as his counsel and insisted that Spinelli "should do his best to maintain [plaintiff's] case." (*Id.*) Plaintiff asserts that he continued to send letters to Spinelli inquiring about the status of his case, including a letter dated May 7, 1997 asking Spinelli to reopen his case, but that Spinelli never responded. (*Id.* at 5 and Ex. K.) Finally, plaintiff asserts that he had difficulty obtaining his file. (*See id.* Exs. F, H and I; Pl.'s 4/9/98 Mem. at 2.)

Despite this apparent breakdown in communication and plaintiff's alleged dissatisfaction with his attorney, Jedrejcic insisted on being represented by Spinelli. Although Spinelli advised Jedrejcic in October of 1996 that his claim should be brought in state court, if at all, Jedrejcic urged Spinelli to reopen his case in federal court. (*Id.* Ex. E.) Despite Spinelli's refusal to do so and his attempt to be relieved as counsel, Jedrejcic insisted that Spinelli pursue the case on his behalf. Jedrejcic's delay until June 2, 1997

26. Although Jedrejcic refers to his June 2 complaint as an "amended complaint," the pleading is entitled "verified complaint."

27. In deciding plaintiff's motion to reopen the 1996 action, this court also considers Plaintiff's Memorandum, dated April 9, 1998, submitted in

the 1997 action, for the same reasons set forth in footnote number nine. *See supra* at n. 8.

28. Presumably, plaintiff was referring to New York State Supreme Court, Richmond County.

in filing his complaint resulted from plaintiff's insistence that Spinelli's represent him, even though he refused to accept Spinelli's advice and knew that Spinelli would not move to reopen his case in federal court. Viewed in this context, Jedrejcic's delay was unreasonable. *Cf. Nemaizer,* 793 F.2d at 62 (stating that Rule 60(b) should not be employed to relieve a party from a voluntary, deliberate choice that later turns out to be unfortunate because "[t]o rule otherwise would empty the finality of judgments rule of meaning").

In addition, defendants have suffered considerable prejudice because they find themselves litigating two cases arising from the same underlying event. *Cf. Cobos,* 179 F.R.D. at 387. Moreover, reopening this action would make the decision to dismiss the 1997 action an empty exercise. Defendants would be forced to continue litigating the same claim, suffering significant prejudice as "their right to rely on a rendered decision is thus jeopardized." *Gelb,* 1991 WL 20011 at *3, 1991 U.S. Dist. LEXIS 1507, at *10; *see e.g. Cobos,* 179 F.R.D. at 387. In addition, although Global, Coca Cola and USOC are on notice that Jedrejcic is pursuing these claims because they are defending the 1997 action as well, service was not executed as to COC in the 1997 action. Re-opening the 1996 action would require COC to litigate a claim that was long-resolved in its favor. In the four years that have passed, it is likely that defense witnesses may no longer be employed by defendants and would be unavailable to assist in the defense of this case, *see Cobos,* 179 F.R.D. at 387, further prejudicing the defendants. *See id.; McKenna,* 1997 WL 66779 at *4, 1997 U.S. Dist. LEXIS 1609, at *11; *Paddington,* 34 F.3d at 1147 n. 9.

The prejudice to defendants is underscored by the fact that plaintiff has been given two chances to secure a favorable decision with respect to diversity. By filing the 1997 action while moving to re-open the 1996 action, plaintiff may establish diversity as of either June 2, 1997 or May 20, 1996. Although the court is construing plaintiff's complaint in the 1997 action as a motion to reopen the earlier action, plaintiff did not

formally move to reopen the first action until *after* defendants moved to dismiss the 1997 action and thirteen months *after* filing his June 2, 1997 complaint. Although plaintiff's RICO claim in the second action was dismissed, this too was an additional opportunity for plaintiff to establish jurisdiction. Thus, plaintiff's argument that he intended the second action to be a motion to reopen the 1996 action permits him to have two bites at the apple and results in undue prejudice to the defendants. Weighing plaintiff's explanation for the lengthy delay against the court's interest in finality and the prejudice to the opposing parties, this court finds that plaintiff did not move to vacate within a reasonable time. *See Nemaizer,* 793 F.2d at 62; *Jackson,* 24 F.Supp.2d at 324; *Cobos,* 179 F.R.D. at 387; *McKenna,* 1997 WL 66779 at *4, 1997 U.S. Dist. LEXIS 1609, at *11; *Paddington,* 34 F.3d at 1147, n. 9. Accordingly, I respectfully recommend that plaintiff's motion be denied as untimely.

## JEDREJCIC FAILS TO SATISFY EITHER RULE 60(b)(1) AND RULE 60(b)(3)

Even if plaintiff's motion were timely, it would still be barred because he fails to satisfy the requirements of either Rule 60(b)(1) or (b)(3). To justify relief under 60(b)(1), plaintiff must show "mistake, inadvertence, surprise, or excusable neglect" and under Rule 60(b)(3) plaintiff must make a showing of fraud, misrepresentation, or other misconduct of an adverse party. *See* Fed. R.Civ.P. 60(b). Moreover, "[r]elief from counsel's error is normally sought pursuant to 60(b)(1). . . ." *Nemaizer,* 793 F.2d at 61. In his moving papers, plaintiff describes the basis for his motion as follows:

> Mr. Spinelli . . . filed the complaint 3 times, because he failed to file it properly and on June 25, 1996, Mr. Spinelli had informed the court that divirsity [sic] doesn't exist, since the plaintiff and defendant Global . . . are a[sic] New York residents, which was a lie. Mr. Spinelli had lied to this court (commited purjury [sic] ) and causing [sic] case # 96–cv–2506 to be dismissed without prejudice on July 2, 1996 . . . by false representation and intentional misrepresentation . . . Mr. Spinelli knew that I had moved to New Jersey in

August of 1995 and took my belongings on September 1995 from my house and moved to 109 Grand Ave, Englewood, New Jersey ... Mr. Spinelli was well aware of my residence in New Jersey, he had called me and faxed me papers in New Jersey in 1995 and 1996 ... He lied about my residence, in order to dismiss my case ... [b]ecause, Mr. Spinelli had commited [sic] fraud, false representation, intentional misrepresentation, knowledge of falsity and intention to deceive, fudiciary [sic] duty, fraud in the inducement, fraud in the execution undue influence, with intent and causing infliction of emotional distress, upon the plaintiff, I am asking this court under the Federal Rule 60(b) of Civil Procedure to overturn the order dated July 2, 1996 [June 25, 1996 Dismissal Order] and allowe [sic] the case # 96 CV 2506 to go to the jury.

(Pl.'s 7/6/98 Mem. at 1–2, 5.) Thus, Jedrejcic contends that Spinelli did not properly file his case because he intentionally alleged that Jedrejcic was a citizen of New York when he knew that plaintiff was a citizen of New Jersey. Jedrejcic argues that due to this fraudulent misrepresentation, the complaint was dismissed for lack of diversity jurisdiction as Global was a New York corporation on May 20, 1996, the date the complaint was filed. (*See* Pl.'s 7/6/98 Mem. at 1–2; Pl.'s 4/9/98 Mem. at 2.) Because the court finds that such conduct cannot be characterized as either a mistake under Rule 60(b)(1) or fraud under Rule 60(b)(3), the court respectfully recommends that Jedrejcic's motion be denied. Against this backdrop, the court begins with an analysis under Rule 60(b)(1).[29]

### A. *Rule 60(b)(1)*

■ In support of his argument that the allegation of New York citizenship was a mistake or excusable neglect, Jedrejcic asserts that: (1) he was unaware of the allegation; (2) he did understand the law regarding diversity jurisdiction; and (3) the allegation was untrue as he was a citizen of New Jersey at the time the complaint was filed. Each of these arguments is unavailing.

### 1. *Plaintiff Verified His New York Residency Four Times*

■ Rule 60(b) "does not afford relief for deliberate tactical decisions of a party." *Cobos*, 179 F.R.D. at 387. Mere dissatisfaction in hindsight with choices deliberately made does not constitute grounds for relief under Rule 60(b). *Paddington*, 34 F.3d at 1147; *Schwartz v. Mandel*, 976 F.2d 213, 218 (4th Cir.1992) (refusing to grant Rule 60(b)(6) relief where litigant made "calculated, free, and deliberate" decision to settle). Rule 60(b) should not be employed simply to relieve a party from a voluntary, deliberate choice that later turns out to be unfortunate as "[t]o rule otherwise would empty the finality of judgments rule of meaning." *Cf. Nemaizer*, 793 F.2d at 62; *see also Dal Int'l Trading Co. v. Sword Line, Inc.*, 286 F.2d 523, 524 (2nd Cir.1961) (denying Rule 60(b) relief to party who entered stipulation dismissing claim because party believed action was a duplication of its claim in an admiralty suit when, in fact, it was not); *Interactive*, 1998 WL 35131 at *3, 1998 U.S. Dist. LEXIS 801, at *9 (addressing party's claim that he mistakenly agreed to the terms of a settlement agreement and stating "relief will not be granted under Rule 60(b)(1) merely because a party is unhappy with the judgment. Instead the party must make some showing of why he was justified in failing to avoid mistake or inadvertence").

---

**29.** Because "Rule 60(b)(3) is not intended to cover acts by counsel for the party seeking to vacate judgment," *see $16,162 in U.S. Currency*, 1994 U.S. Dist. LEXIS 7848, at *10; *see also Faulk v. The Estate of Otis Bantum*, 1995 WL 20328 at *1, No. 89 Civ. 4374, 1995 U.S. Dist. LEXIS 481, at *7 (S.D.N.Y. Jan. 19, 1995) ("Rule 60(b)(3) pertains only to the conduct of an adverse party."), plaintiff's claims regarding Spinelli's alleged "fraud upon this court" will instead be analyzed pursuant to Rule 60(b)(1), *see Nemaizer*, 793 F.2d at 61. Additionally, this Circuit "has not recognized gross negligence as an extraordinary circumstance justifying vacation of a judgment." *$16,162 in U.S. Currency*, 1994 U.S. Dist. LEXIS 7848, at *10; *see also Cobos*, 179 F.R.D. at 387 ("The requirement that negligence be "excusable" acts as a limitation necessary to prevent abuse by the parties ... and for this reason, gross negligence cannot be labeled "excusable" "); *Faulk*, 1995 WL 20328 at *3, 1995 U.S. Dist. LEXIS 481, at *7 (noting "this circuit has refused to consider an attorney's grossly negligent conduct to be grounds for relief pursuant to Rule 60(b)(6)").

In the instant case, the record supports a finding that the allegation regarding Jedrejcic's citizenship was the product of plaintiff's own free will. Plaintiff signed the original verified complaint which stated that he was a resident of New York and affirmed that he had read the complaint and believed its contents to be true. (*See* 96 CV 2506 Verified Compl.) In addition, he filed and verified two amended complaints, dated May 29, 1996 and June 17, 1996, respectively, both of which allege that he is a resident of New York. In addition the *pro se* verified complaint that plaintiff subsequently filed on June 2, 1997, which Jedrejcic contends was intended as a motion to reopen the 1996 action pursuant to Rule 60(b), also alleged that Jedrejcic was a New York resident. Plaintiff's deliberate choice to sign these complaints, without inquiry, does not constitute mistake or excusable neglect. *See Ackermann*, 340 U.S. at 198, 71 S.Ct. 209 ("There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."); *see also Interactive*, 1998 WL 35131 at *3, 1998 U.S. Dist. LEXIS 801, at *9.[30]

In addition, plaintiff's letter to his attorney dated June 30, 1997, discussing the dismissal of the 1996 action, further supports a finding that the allegation of New York residency in the 1996 complaint was not a mistake. (Pl.'s 7/6/98 Mem.Ex. K.) In this letter, Jederejcic addresses the fact that his action has been dismissed three times for lack of diversity jurisdiction and states:

On 6/28/96 you informed the court that Global Sports Consultants is a New York Corporation. I had told you (from my knowledge) that Global Sports Consultants is a Delaware Corporation. As such there would be the required diversity and the case should have moved forward. I do not understand why the case didn't proceed. . . .

(Pl.'s 7/6/98 Mem.Ex. K at 1–2.) This letter demonstrates that Jedrejcic believed that diversity jurisdiction existed, not because he was a citizen of New Jersey but because Global was a Delaware corporation. In fact, the letter is conspicuously silent on Jedrejcic's citizenship. Global's incorporation in Delaware would only be necessary if Jedrejcic was a citizen of New York. Had Jedrejcic truly thought that he was a citizen of New Jersey at the time he wrote this letter, there would be no need to argue that Global was incorporated in Delaware. Thus, Jedrejcic's claim that Spinelli knew, and should have alleged, that plaintiff was a New Jersey citizen when he filed the initial complaint did not surface until after Jedrejcic wrote his June 30, 1997 letter. Jedrejcic should not now be permitted to benefit because he realizes in hindsight that his allegation of New York citizenship was fatal to his case. (*See* Defs.' Mem. at 3 ("It was only after said defendant Global Sports Consultant, Ltd. submitted numerous compelling exhibits to defeat the second action that plaintiff brought on the instant motion, two years later, to resurrect his first action.").)[31] *See Ackermann*, 340 U.S. at 198, 71 S.Ct. 209; *Dal Int'l Trading Co.*, 286 F.2d at 524; *In-*

---

**30.** Plaintiff argues that Spinelli listed him as a citizen of another state in a draft pleading. (*See* Pl.'s 4/9/98 Mem. at 3; Pl.'s 7/6/98 Mem. at 3.) In support of this argument, Jedrejcic submits an unsigned attorney verification, dated January 7, 1996 in Staten Island, New York, which he contends shows that he "was not a New York resident, but a resident of a different state." (Pl.'s 4/8/98 Mem. at 3.) However, the unsigned attorney verification provides that: "[t]he undersigned further states that the reason this affirmation is made by the undersigned and not by our client is that the plaintiff is presently not within the *county* where your affirmant maintains his office." (*Id.* Ex. F (emphasis added).) This unsigned verification, which was never filed with the court, clearly does not support plaintiff's contention. At best, it merely indicates that plaintiff was not present in Richmond County—

not the State of New York—on an unspecified date.

**31.** Defendants request Rule 11 sanctions in their memorandum of law in opposition to plaintiff's motion to vacate, dated July 17, 1998. (*See* Defs.' Mem. at 3.). However, this motion is not properly before the court and, therefore, is not considered. *See* Fed.R.Civ.P. 11(c)(1)(A) ("A motion for sanctions under this rule shall be made separately from other motions or requests. . . . It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.").

*teractive*, 1998 WL 35131 at *3, 1998 U.S. Dist. LEXIS 801, at *9. Accordingly, the court rejects Jedrejcic's claim of mistake on this ground.

### 2. *Plaintiff's Failure to Understand the Law*

 Plaintiff contends that despite the clear allegation of citizenship, he did not understand that by signing the verified complaint he was agreeing that he was a citizen of New York:

> Mr. Spinelli had never explained to me about diversity issue [sic], and had me sign more papers for filing, which I know now that it was for all [sic] those amended complaints. Which he also never told me that he had to file so many times and when the case was dismissed [sic] he never informed me about it, but waited to tell me (since I could have appealed in 30 days, if I knew all those laws and his misrepresentation to the court) or explain it to me. . . .

(Pl.'s 7/6/98 Mem. at 1–2, 5; Ex. K at 1–2 ("You have failed to keep me informed of developments [sic] or to explain to me why my case was dismissed.").) Plaintiff's "failure to understand the law cannot serve as grounds for reopening." *Cobos*, 179 F.R.D. at 387; *see also Pioneer Inv. Servs., Inc. v. Brunswick Assocs. Ltd. Partnership*, 507 U.S. 380, 391, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) ("[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect."); *Interactive*, 1998 WL 35131 at *3, 1998 U.S. Dist. LEXIS 801, at *9; *Meagher*, 1993 U.S. Dist. LEXIS 17161, at *4. Plaintiff is responsible for following the status of his case, *see Sacco v. Matter*, 154 F.R.D. 35, 37 (N.D.N.Y. 1994) (discussing plaintiff's duty to keep apprised of state of his action in context of Rule

60(b)(1)), and should have safeguarded his own rights, *see Nemaizer*, 793 F.2d at 62 (noting that "an attorney's actions, whether arising from neglect, carelessness or inexperience, are attributable to the client, who has a duty to protect his own interests by taking such legal steps as are necessary.") (citing *Ackermann*, 340 U.S. at 197–98, 71 S.Ct. 209). Accordingly, plaintiff's claimed ignorance of the law cannot serve as a basis for relief under Rule 60(b)(1).[32]

### 3. *Counsel Did Not Err Because Jedrejcic Was a Citizen of New York at the Time the 1996 Action Was Filed*

Plaintiff argues that Spinelli made a mistake in alleging that he was a New York citizen because at the time the complaint was filed, May 20, 1996, Jedrejcic had moved his domicile to New Jersey. Because the court finds that Jedrejcic was in fact a citizen of New York as of May 20, 1996, the court finds that Spinelli's allegation of New York citizenship cannot constitute a mistake.

 For purposes of diversity jurisdiction, it is well-settled that the citizenship of an individual is his or her domicile at the time the action was commenced. *See Gutierrez v. Fox*, 141 F.3d 425, 427 n. 1 (2d Cir. 1998) ("There is a need to fix domicile with some reasonable certainty at the threshold of litigation. This substantive policy, by which federal courts are able to ascertain their diversity jurisdiction without repeated disruption and waste of judicial resources, would be undermined if domicile had to be re-proven every time a party who had once invoked such jurisdiction came forward with any evidence of a change."); *Ferrara*, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS

---

**32.** To the extent Jedrejcic argues that Spinelli's alleged error was caused by counsel's failure to understand diversity jurisdiction, Jedrejcic's argument must fail as relief under Rule 60(b)(1) is not available based upon an attorney's ignorance of the law. *See Eastwood Auto Body & Garage, Inc. v. City of Waterbury*, 159 F.3d 1346, 1998 WL 487017, No. 97 Civ. 9278, 1998 U.S.App. LEXIS 18875 (2d Cir. June 11, 1998) (noting this Circuit "has consistently declined to relieve a client under Rule 60(b)(1) due to his attorney's mistake or ignorance of the law or of the rules of the court, or his inability to efficiently manage his caseload") (quoting *Nemaizer*, 793 F.2d at 61); *Cobos*, 179 F.R.D. at 387 (noting Circuit's refusal to relieve a party of the "burdens of a final judgment entered against him due to the mistake or omission of his attorney by reason of the latter's ignorance of the law or of the rules of the court. . . .") (quoting *United States v. Cirami*, 535 F.2d 736, 741 (2d Cir.1976) ("*Cirami I*")). In addition, "[a]n attorney's failure to follow an unambiguous statute generally will not result in a finding of 'excusable neglect.'" *Cobos*, 179 F.R.D. at 387.

2872, at *7 (citing *Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 828, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989)); *Dimaggio*, 1999 WL 675979 at *1, 1998 U.S. Dist. LEXIS 13468, at *9; *McEachron v. Glans*, 983 F.Supp. 330, 333 (N.D.N.Y.1997). Domicile requires: (1) the party's physical presence in the state; and (2) the intent to remain in that state indefinitely. *See Jarmuth v. Jarmuth*, 1999 WL 349626 at *1, No. 99 Civ. 3073, 1999 U.S. Dist. LEXIS 8015, at *2 (S.D.N.Y. May 28, 1999); *Ferrara*, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS 2872, at *7 (citing cases); *McEachron*, 983 F.Supp. at 333 (citing cases). Once a domicile is acquired, "it is presumed to continue until it is shown to have been changed." *See Gutierrez*, 141 F.3d at 427 (quoting *Desmare v. United States*, 10 Ct.Cl. 385, 1800 WL 829 (1874)); *National Artists Management Co. v. Weaving*, 769 F.Supp. 1224, 1228 (S.D.N.Y.1991) ("A person is born with a particular domicile, and is presumed to retain it unless it can be shown that she has established a new domicile."). Moreover, the person alleging a change of domicile has the burden of proving, by clear and convincing evidence, that his or her domicile has changed. *See Katz v. Goodyear Tire and Rubber Co.*, 737 F.2d 238, 243 (2d Cir.1984); *Gutierrez v. Fox*, 966 F.Supp. at 217 n. 2 ("The party seeking to establish a change of domicile bears the burden of proving that change by clear and convincing evidence."); *McEachron*, 983 F.Supp. at 333 ("The party asserting a change of domicile must prove physical presence in the new domicile coupled with intent to remain indefinitely by clear and convincing evidence in order to rebut the presumption that a person retains the former domicile until acquiring a new one."); *Boston Safe Deposit & Trust Co. v. Morse*, 779 F.Supp. 347, 349 (S.D.N.Y. 1991) (noting that defendants must prove both elements by clear and convincing evidence). To satisfy this burden, a party must demonstrate both physical presence and the intention to remain there indefinitely. *Gutierrez*, 141 F.3d at 428 (noting that change of domicile "cannot be made except facto et animo. Both are alike necessary. Either without the other is insufficient"). However, "[i]ntent is the crux of the test because physical presence alone in a new location is insuf-

ficient to support a change of domicile." *Boston Safe Deposit & Trust Co.*, 779 F.Supp. at 349.

█ "Determination of intent is a factual question for the court." *Hamilton v. AccuTeck*, 13 F.Supp.2d 366, 369 (E.D.N.Y.1998). To ascertain intent, courts employ a "totality of the evidence" approach under which no single factor is conclusive. *See Weiner v. Zeneca Pharm. Found.*, 1999 WL 342247 at *2 , No. 97 Civ. 186, 1999 U.S. Dist. LEXIS 7997, at *7 (E.D.N.Y. May 14, 1999) ("To ascertain intent, a court must examine the entire course of a person's conduct in order to draw the necessary inferences as to the relevant intent.") (quoting *National Artists Management*, 769 F.Supp. at 1227); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F.Supp. 293, 297 (S.D.N.Y.1997); *Chappelle v. Beacon Communications Corp.*, 863 F.Supp. 179, 181 (S.D.N.Y.1994). The following factors are often considered when determining whether a party intends to remain indefinitely in a state: "voting registration; place of employment; current residence; location of real and personal property; location of spouse and family; driver's license; automobile registration; location of bank account; payment of taxes; tax return address...." *See Ferrara*, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS 2872, at *7 (citing *Borsack*, 974 F.Supp. at 297); *see also Weiner*, 1999 WL 342247 at *2, 1999 U.S. Dist. LEXIS 7997, at *7 (listing factors); *Chappelle*, 863 F.Supp. at 181 (same). Courts have also considered such objective indicators as whether the person owns or rents his place of residence, the nature of the residence, acquisition and listing of telephones and mail service, and affiliations with social organizations. *See Connolly v. Spielman*, 999 F.Supp. 270, 273 (N.D.N.Y.1998); *Kavowras v. Pinkerton, Inc.*, 1998 WL 209617 at *1, No. 97 Civ. 6098, 1998 U.S. Dist. LEXIS 5962, at *4 (S.D.N.Y. Apr. 29, 1998); *Chappelle*, 863 F.Supp. at 181. Although plaintiff's submissions are silent as to many of these factors, as discussed below, the weight of the objective evidence suggests that Jedrejcic remained a New York domiciliary.

In order for the court to find that Spinelli made a mistake with regard to Jedrejcic's citizenship, Jedrejcic must prove that he established a new domicile in New Jersey as of May 20, 1996. Although the mere assertion of a party's residence is insufficient to establish citizenship for diversity purposes, *see Canedy*, 126 F.3d at 102, "[a]n individual's residence at the time a lawsuit is commenced provides prima facie evidence of his domicile." *Weiner*, 1999 WL 342247 at *2, 1999 U.S. Dist. LEXIS 7997, at *7. As discussed above, plaintiff verified the original Complaint in this action, stating that he was a resident of New York and affirming that he had read the complaint and believed its contents to be true. (*See* 96 CV 2506 Verified Compl.) In addition, he verified and filed two amended complaints, dated May 29, 1996 and June 17, 1996, respectively, both of which allege that he is a resident of New York. This is prima facie evidence that, for diversity purposes, Jedrejcic was a domiciliary of New York as of May 20, 1996. *See Weiner*, 1999 WL 342247 at *2, 1999 U.S. Dist. LEXIS 7997, at *7.

In support of his claim that he changed his domicile to New Jersey, plaintiff offers various affidavits and documentary evidence. Although the evidence provided by plaintiff may demonstrate that Jedrejcic was physically present in New Jersey when the 1996 action was commenced, the same evidence is not sufficient to rebut the presumption that a person retains his former domicile until he acquires a new one. *See Ferrara*, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS 2872, at *7; *Dimaggio*, 1999 WL 675979 at *1, 1998 U.S. Dist. LEXIS 13468, at *9; *Chappelle*, 863 F.Supp. at 181. First, plaintiff submits a sworn affidavit from a friend, Stanko Galo ("Galo"), stating that "Jedrejcic moved to live with [him] on or about Sept. 1995." (Pl.'s 4/9/98 Mem., Ex. B.) Galo's address is listed at the top of the affidavit as 109 Grand Avenue, Englewood, New Jersey. In addition, plaintiff submits a sworn letter to the court, dated April 9, 1998, in which he states that he moved his belongings to 109 Grand Avenue, Englewood, New Jersey in September 1995. (*Id.* at 3; *see also* Pl.'s 7/6/98 Mem. at 2.) Although Galo's affidavit and Jedrejcic's letter indicate that plaintiff moved into the Grand Avenue address, they do not demonstrate that Jedrejcic had an intent to remain in New Jersey indefinitely. *See Gutierrez*, 141 F.3d at 429; *see also Weiner*, 1999 WL 342247 at *2, 1999 U.S. Dist. LEXIS 7997, at *7; *Ferrara*, 1999 WL 135234 at *1, 1999 U.S. Dist. LEXIS 2872, at *7; *Connolly*, 999 F.Supp. at 273; *Borsack*, 974 F.Supp. at 297; *Chappelle*, 863 F.Supp. at 181. For example, there is no indication whether plaintiff shared housing costs with Galo or was simply taken in by his friend while he looked for more permanent housing. Nor does Jedrejcic say how long he intended to remain at his friend's apartment. Thus, these submissions are insufficient to rebut the presumption that Jedrejcic's domicile remained in New York.

Plaintiff also provides a copy of a report from the Englewood Police Department which demonstrates that on September 22, 1995, Jedrejcic reported a car burglary in Englewood. (Pl.'s 4/9/98 Mem., Ex. A.) However, the police report lists Jedrejcic's home address as "4 Sunset La., Staten Is., N.Y. 10307" with a New York phone number of (718) 966–8258. (*Id.*) The report also lists plaintiffs "New York Drivers License" as one of the items reported stolen. (*Id.*) The report states that "[t]he victim is staying with a friend at 109 Grand Ave, Apt # B–A, [sic] If the above listed items are recovered he can be contacted at 567–6781." (*Id.*) Although plaintiff offers the police report as proof that he changed his domicile to New Jersey, the report implies that he remained domiciled in New York, as plaintiff gave the police a New York address and said that he was "staying with a friend" in New Jersey. This evidence suggests that Jedrejcic's living arrangements in New Jersey were temporary in character and, therefore, could not effect a change of domicile. The police report does not support Jedrejcic's contention that he moved to New Jersey with an intent to remain there indefinitely.

Plaintiff also submits portions of MCI phone bills for the telephone number (201) 567–6781 for the months of December 1995 through June 1996, excluding March. (Pl.'s 4/9/98 Mem., Ex. H.) Plaintiff asserts that these phone bills demonstrate that he tele-

phoned Spinelli from Englewood, New Jersey as Spinelli's phone number is listed several times on the bills. (*Id.* at 3–4.) However, because Jedrejcic failed to produce the first page of these phone bills, the court is unable to ascertain whose phone bills these are. In this regard, the bills do not identify the account holder or list the 109 Grand Avenue, Englewood, New Jersey address. (*See id.* Ex. H.) Thus, there is nothing in the record linking these phone bills to Jedrejcic. Even assuming that the records reflect calls made by plaintiff from the Grand Avenue address, they shed no light on either the length of plaintiff's stay at Grand Avenue or whether he intended to remain indefinitely in New Jersey. Accordingly, the MCI records fail to support Jedrejcic's contention that he changed his domicile to New Jersey.

Jedrejcic also refers the court to numerous letters he wrote listing his return address as 109 Grand Avenue, Englewood, New Jersey, and to letters and faxes from Spinelli which were sent to this New Jersey address. (*Id.* Exs. C, F, and G.) However, the court only considers the retainer agreement, dated September 13, 1995, as relevant to determining Jedrejcic's intent to remain indefinitely in New Jersey as of the commencement of this action. Jedrejcic's remaining submissions fall outside the relevant time period given they bear dates past May 20, 1996.[33] The retainer agreement lists Jedrejcic's address as 4 Sunset Lane, Staten Island. New York, 10307. (*See* Pl.'s 7/6/98 Mem., Ex. M.) This fact supports a finding that Jedrejcic has failed to rebut the presumption that he was still a New York domiciliary at the time the 1996 action was commenced.

Finally, Jedrejcic also proffers his 1996 W–2 forms for New Jersey listing Jedrejcic's address as 109 Grand Avenue, Englewood, New Jersey. (Pl.'s 4/9/98 Mem., Ex. D.) While the fact that plaintiff filed a New Jersey tax return is relevant, it is not dispositive. *See Gutierrez,* 966 F.Supp. at 217 (noting no single factor is conclusive); *Boston Safe Deposit & Trust Co.,* 779 F.Supp. at 349 ("No single factor determines one's intent to remain in the state indefinitely.") In addition, the tax return demonstrates that plaintiff held three different jobs in New Jersey during 1996. Although place of employment is a factor to be considered in deciding domicile, some indicia are more meaningful than others. *Cf. Kavowras v. Pinkerton, Inc.,* 1998 WL 209617 at *2, No. 97 Civ. 6098, 1998 U.S. Dist. LEXIS 5962, at *4 (S.D.N.Y.1998); *Hendry v. Masonite Corp.,* 455 F.2d 955 (5th Cir.1972) (fact that defendant worked in Chicago did not show that he changed his domicile when other evidence indicated he remained Mississippi domiciliary). In addition, plaintiff was receiving unemployment benefits based upon three different short-term jobs he held in New Jersey.[34] This evidence implies, as did the fact that he was "staying with a friend," that his presence in New Jersey was unsettled and may have been transient in nature. In any event, although this evidence does show that Jedrejcic was physically present in New Jersey, it does not aid plaintiff in establishing his intent to remain there indefinitely. (*See id.* Exs. C and D.)

In sum, although the evidence provided by Jedrejcic demonstrates that he was physical-

---

**33.** The court does not consider the following submissions as they are dated after the May 20, 1996 filing date: (1) letters from Jedrejcic to Spinelli dated October 9, 1996, October 11, 1996 and December 4, 1996, respectively, all listing plaintiff's address as 1244 Schmidt Avenue, Union, New Jersey, 07083; (2) letter to Jedrejcic from Attorney George Sommers dated December 29, 1997 using the Englewood, NJ address; (3) letter to Jedrejcic from Spinelli dated May 23, 1997 using 1244 Schmidt Avenue, Union, New Jersey 07083 address; (4) letter to Spinelli from Jedrejcic dated May 7, 1997 listing return address as 47 Bradley Avenue, Bergenfield, NJ 07621; (5) letter to Spinelli from Jedrejcic dated June 30, 1997 listing return address as 70 Beech-

wood Street, Bergenfield NJ 07621. (*See* Pl.'s 7/6/98 Mem., Exs. D, E, I, F, J, K.) Even had the court considered these submissions, plaintiff lists addresses other than the 109 Grand Avenue New Jersey address. The existence of other addresses within a relatively short time frame suggest that plaintiff's residence was unsettled, not that he intended to remain there indefinitely. Again, these submissions fail to sustain the burden of proving that Jedrejcic's domicile changed from New York to New Jersey.

**34.** The court considers this pursuant to plaintiff's argument, (Pl.'s 4/9/98 Mem. at 3), not pursuant to Ex. E because the copy provided is illegible.

ly present in New Jersey when the 1996 action was commenced, the same evidence is not sufficient to rebut the presumption that a person retains his former domicile until he acquires a new one, especially when plaintiff verified his New York residency three times in this action. *See Ferrara*, 1999 WL 135234 at *3, 1999 U.S. Dist. LEXIS 2872, at *7; *Dimaggio*, 1999 WL 675979 at *1, 1998 U.S. Dist. LEXIS 13468, at *9; *Chappelle*, 863 F.Supp. at 181. On balance, considering the totality of the evidence and the established legal presumptions, I find that Jedrejcic did not establish, by clear and convincing evidence, a new domicile in New Jersey; instead he remained a domiciliary of New York as of May 20, 1996. *See Gutierrez*, 966 F.Supp. at 217 n. 2; *McEachron*, 983 F.Supp. at 333; *National Artists Management Co.*, 769 F.Supp. at 1228. Accordingly, this court lacks subject matter jurisdiction over the 1996 action and Spinelli did not make a mistake when he alleged that Jedrejcic was a New York citizen. I respectfully recommend that Jedrejcic's motion for relief under Rule 60(b)(1) be denied.

### B. *Rule 60(b)(3)*

A Rule 60(b)(3) motion will only be granted where the "moving party demonstrates that the non-movant engaged in misconduct that substantially interfered with the movant's ability to prepare its case." *Fidelity Partners, Inc. v. First Trust Co.*, 58 F.Supp.2d 55, 59, 1999 U.S. Dist. LEXIS 9037, at *12 (S.D.N.Y.1999); *see also Fitzgerald v. Field*, 1998 WL 152575 at *2, No. 97 Civ. 5564, 1998 U.S. Dist. LEXIS 4205, at *7 (S.D.N.Y. Mar. 31, 1998) (stating plaintiff must show "fraud which seriously affects the integrity of the normal process of litigation" to prevail) (quoting *Gleason v. Jandrucko*, 860 F.2d 556, 559 (2d Cir.1988)). The Second Circuit explained the requisite level of misconduct necessary to establish fraud upon the court:

> [a]bsent the type of fraud which subvert[s] the integrity of the court itself, or is ... perpetrated by officers of the court, ... the requisite interference with the judicial machinery cannot be established and an independent action for fraud on the court therefore will not lie.

*Fitzgerald v. Field*, 1998 WL 152575 at *2, 1998 U.S. Dist. LEXIS 4205, at *7. "[F]raud is not to be presumed but must ordinarily be proven by clear and convincing evidence—in other words, 'highly convincing' evidence." *Gonzalez v. Gannett Satellite Info. Network*, 903 F.Supp. 329, 332 (N.D.N.Y.1995), *aff'd*, 101 F.3d 109 (2d Cir.1996); *see also Fetik*, 1999 WL 459805 at *3, 1999 U.S. Dist. LEXIS 9755, at * 15–16 (stating a Rule 60(b)(3) motion cannot be granted without "clear and convincing evidence of material misrepresentations") (quoting *Fleming v. New York Univ.*, 865 F.2d 478, 484 (2d Cir.1989)). Moreover, "[t]he alleged misconduct must have prevented the movant from fully and fairly presenting her case." *Fetik*, 1999 WL 459805 at *5, 1999 U.S. Dist. LEXIS 9755, at *16 (citing *Gonzalez*, 903 F.Supp. at 332). Finally, it is well established that "the failure to disclose allegedly pertinent facts relating to a controversy before the court does not constitute 'fraud upon the court' for purposes of setting aside a judgment pursuant to Fed. R.Civ.P. 60(b)." *Fitzgerald*, 1998 WL 152575 at *2, 1998 U.S. Dist. LEXIS 4205, at *7 (citing *Gleason*, 860 F.2d at 559–60).

Plaintiff alleges that defendants influenced Spinelli to file the 1996 action improperly. (Pl.'s 7/6/98 Mem. at 6 ("Mr. Spinelli had to be influenced by the defendants in order for him to file my case the way he did, and it [sic] had to belive [sic] that I didn't have money in order to pursue the case any further and the only one who knew my monetary situation was Global").) In his moving papers Jedrejcic specifically claims that Global knew he was not a resident of New York at the time he filed the 1996 action,

> Defendant [Global] knew I was not a resident of New York ... since my exwife is an officer of the corporation....Also, president of [Global] corporation, Sead Dizdarevic knew that I was not a New York resident but a New Jersey resident. The defendant [Global] had failed to inform the court of that fact because it was in their interest and Mr. Frohman who represents GSC I believe knew of that fact also. In fact the defendants had intentionally omitted that fact and together with plaintiff's

attorney Mr. Spinelli, purposely commited [sic] fraud upon this court.

(Pl.'s 7/6/98 Mem. at 7.) Jedrejcic also suggests that defendants were involved with an alleged theft of certain documents pertaining to this case as "evidence of wrongdoings by the defendants was stolen."[35] (*Id.* at 2.) Jedrejcic's claim is wholly without merit.

Even assuming that defendants knew that plaintiff was *residing* in New Jersey at the time the action was commenced, plaintiff has not shown that defendants were aware that Jedrejcic was a *citizen* of New Jersey for diversity purposes. In fact, he was not. Moreover, even if defendants were aware that plaintiff was a New Jersey resident, their failure to present this fact to the court "is a mere non disclosure and not the type of fraud which subverts the integrity of the judicial process." *See Fitzgerald v. Field*, 1998 WL 152575 at *3, 1998 U.S. Dist. LEXIS 4205, at *7 (citing *Gleason*, 860 F.2d at 559–560). Additionally, "if the aggrieved litigant had an opportunity to discover the wrongdoing in the underlying action, the litigant's failure to do so 'constitutes a basis for denying [the litigant's] requested relief.'" *Fitzgerald*, 1998 WL 152575 at *3, 1998 U.S. Dist. LEXIS 4205, at *8 (quoting *Cresswell v. Sullivan & Cromwell*, 771 F.Supp. 580, 587 (S.D.N.Y.1991)). As discussed earlier, Jedrejcic verified that he was a resident of New York four times. Plaintiff should not be permitted to blame defendants for his "own fault, neglect or carelessness." *See id.* (quoting *Weldon v. United States*, 845 F.Supp. 72, 82 (N.D.N.Y.1994)). In addition, any allegation regarding theft of evidence has not been sufficiently substantiated with clear and convincing evidence. *See Gonzalez*, 903 F.Supp. at 332. Because plaintiff's asserted grounds for relief do not qualify as the type of fraud or misconduct encompassed by Rule 60(b)(3) and because plaintiff has failed to establish exceptional circumstances warranting relief, the court respectfully recommends that plaintiff's motion be denied.

### C. *Meritorious Claim*

Even if Jedrejcic had demonstrated "exceptional circumstances" warranting relief under Rule 60(b), he would still need to show that he "possess[es] a meritorious claim before [he] can prevail." *Cobos*, 179 F.R.D. at 389. Given the fact that plaintiff has failed to establish that he changed his domicile to New Jersey as of May 20, 1996, permitting plaintiff to reopen this case would be an empty exercise as the court would lack subject matter jurisdiction over his claims. Accordingly, Jedrejcic cannot demonstrate that he has a meritorious claim and his motion should be denied.

### CONCLUSION

For the foregoing reasons, the court is satisfied that defendant Global Sports Consultants, being a New York corporation, did indeed move its principal place of business to New Jersey by the commencement of the 1997 action, thus destroying complete diversity in the case no matter which state, New York or New Jersey, the court determines to be Jedrejcic's domicile. Thus, even if plaintiff were granted leave to replead in the 1997 matter, the record is insufficient to establish complete diversity between the parties. Accordingly, I respectfully recommend that defendants' motion to dismiss the 97 CV 3865 action be granted and that this case be dismissed without prejudice to refile in State Court.

In the 1996 action, although the court has made every effort to resolve all doubts in plaintiff's favor, the facts do not warrant Rule 60(b) relief. Accordingly, I respectfully recommend that plaintiff's motion to reopen the 96 CV 2506 action be denied.

In light of the court's recommendation that defendants' motion to dismiss the 1997 action be granted and plaintiff's Rule 60(b) motion to vacate the Order of Dismissal in the 1996

---

**35.** "During the night of September 21, 1995, my car was burglarized ... and I had told Mr. Spinelli about it especially, since, to me the burglary was suspiciouse [sic] and same other evidence of wrongdoings by defendants was stolen together with all my personal papers and belong-

ings. Mr. Spinelli didn't want to pursue this theft, as an act committed by the defendants, which I belived [sic] it was done purposly [sic] by defendants GSC to insure I want [sic] have any evidence in my case." (Pl.'s 7/6/98 Mem. at 2.)

action be denied, Jedrejcic's motion for appointment of counsel is denied as moot.

Objections to this report and recommendation, if any, must be served and filed within ten (10) business days, with courtesy copies to Judge Ross and the undersigned, in order to preserve appellate review. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

SO ORDERED.

Oct. 6, 1999.